[No. 8016.  Department Two.  July 3, 1909.]

GREAT NORTHERN RAILWAY COMPANY *et al.*, *Appellants*, v. SNOHOMISH COUNTY *et al.*, *Respondents*.[1]

TAXATION—ASSESSMENT—REVIEW—DISCRETION. In the absence of fraud, the courts cannot review the discretion of the tax commission in determining the amount at which different classes of railroad track shall be assessed.

SAME—TAX COMMISSION—POWERS—RAILROAD PROPERTY. A determination by the tax commission as to the amount to be assessed against railroad tracks being binding upon county assessors, it is immaterial that the commissioners viewed their powers as only advisory.

SAME. The law making it the duty of the tax commissioners to classify railroad property and superintend its assessment, instructions sent out to all assessors fixing the assessment on different classes of railroad track and rolling stock will be presumed to have been sent in conformity to the law, and are binding upon the county assessors; and a larger assessment by an assessor is void, notwithstanding he honestly endeavored to assess it at sixty per cent of its value, uniformly with other property in the county.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered January 11, 1909, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to enjoin the collection of taxes assessed against railway property. Reversed.

*L. C. Gilman, E. M. Carr,* and *F. V. Brown,* for appellants.

*Ralph C. Bell* (*Cooley & Horan,* of counsel), for respondents.

[1]Reported in 102 Pac. 881.

Dunbar, J.—This action was brought by the plaintiffs for the purpose of enjoining the collection of a portion of the taxes assessed against the property of the plaintiffs in Snohomish county, Washington, for the year 1906, as to which portion the plaintiffs claimed that the assessment was illegal and void; and to require the defendant, the treasurer of Snohomish county, to receive and accept from plaintiffs, in full payment of their just and lawful taxes assessable in said county for said year, the sum of $40,608.38, and to compel the cancellation upon the tax rolls of said county of all assessments and taxes against the plaintiffs for the year 1906. The complaint is a long one, to which the defendants demurred. The demurrer was sustained, appeal was prosecuted to this court, and the judgment of the lower court was reversed, the case being reported in 48 Wash. 478, 93 Pac. 924. Reference is made to that case for a detailed statement of the complaint.

For the purpose of making this opinion intelligible, however, it is necessary to say that the main contention set forth in the complaint was, that the taxes of railroad property had been classified by the board of tax commissioners, and the assessors instructed to assess the property in conformity with such classification; that the established rate of assessment of the right of way and track of the several classes of railroads was as follows: First class, $2.75 per foot, or $14,520 per mile; first class B, $2 per foot, or $10,560 per mile; second class, $1.50 per foot, or $7,920 per mile; third class, ninety cents, or $4,752 per mile, etc.; that the assessors of the other counties in the state had followed the direction given by the tax commissioners in relation to valuation aforesaid, but that the assessor of Snohomish county has assessed railroad property in the county of Snohomish as follows: The main line first class road of the plaintiffs at $25,900 per mile, and the rolling stock on the same at $3,960 per mile; the first class B road of the plaintiffs at $19,000 per mile, and rolling stock thereon at $3,300 per

mile.   The rolling stock on 4.62 miles of said first class
B road was assessed at $1,320 per mile, and it was claimed,
therefore, that plaintiffs' property had been assessed for tax-
ation for the year 1906 at a valuation disproportionate to
all other railroad property in the state, and at a valuation
relatively greater than the other railroad property in the
state had been assessed for said year, which amounted to
$26,000.08 in excess of the amount authorized by said state
board of tax commissioners and by law.

In overruling the judgment of the court in sustaining the
plaintiffs' demurrer, it was decided by this court, (1) that
the main track and rolling stock of a railway extending
through two or more counties in this state are an entirety for
the purpose of assessment and taxation; (2) that the entire
value of such main track and rolling stock must be appor-
tioned between the several counties through which the road
passes, in the proportion that the mileage in each of such
counties bears to the entire mileage in the state; (3) that
such main track and rolling stock must be assessed at their
true and fair value in money; (4) that the assessment shall
be equalized as between the different counties, so that equality
of taxation shall be secured according to the provisions of
the law; (5) that the state board of tax commissioners is
given general supervision over assessors and county boards
of equalization to that end.   The court, quoting § 32 of the
revenue act of 1897 (Laws 1897, p. 150), to the effect that:

"The value of the 'railroad track' shall be listed and taxed
in the several counties in the proportion that the length of
the main track in such county bears to the whole length of
the road in the state, except the value of the side or second
track, and all turnouts, and all station houses, depots, ma-
chine shops, or other buildings belonging to the road, which
shall be taxed in the county in which the same are located;"

and § 34, which provides that:

"The rolling stock shall be listed and taxed in the several
counties in the proportion that the length of the main track
used or operated in such county bears to the whole length of

the road used or operated by such person, company or corporation, whether owned or leased by him or them in whole or in part."

It would seem that, in consideration of the sections quoted, no other decision could have been properly rendered in the case. The opinion also set forth § 2 of the act creating the state board of tax commissioners (Laws 1905, p. 224), which provides that:

"The commissioners shall have the power, and it shall be their duty: . . . Second: To exercise general supervision over assessors and county boards of equalization and the determination and assessment of the taxable property in the several counties, cities and towns of the state, . . ."

It was held by this court that the term "general supervision," as used in the statute, meant more than advisory power; that the law clothed the commission with power to determine, and to direct the assessors of the different counties to carry into effect the determinations of the board, in relation to the assessment of property; that the action of the assessor of Snohomish county worked an inequality in the assessment of the properties of the appellant companies as between the different counties of the state for 1906; that the state board of tax commissioners acted within its jurisdiction when it fixed the value of inter-county railroads for the purpose of taxation; that the acts of the Snohomish county officials were in disregard of the lawful orders and directions of their superior officers, and that they were therefore void and of no effect. This decision affected only the question raised, that the complaint did not state a cause of action, while this case involves the question of whether the material allegations of the complaint were proven.

The court made a finding, that the tax commission did not assess, or attempt to assess, the value of the railroad property in Snohomish county; that it gave the assessor no instructions as a board as to what value he should place upon it; that the only positive instruction was that the property

should be assessed at sixty per cent of its value; and it was found that the assessor honestly attempted to do that. So that the case before us now is narrowed, under the former ruling of this court, which is the law of this case, to the question of whether the commission did direct the assessors to assess the railroad property in controversy at the rate of assessment quoted above.

It is urged by the respondents that it appears from the testimony in this case that, if the assessor had followed the suggestions of the commissioners and assessed the railroad property at the figures suggested by them, the property would not have been assessed at sixty per cent of its value; that the rest of the property in the county being assessed at sixty per cent of its value, there would not have been uniformity of taxation, and that, consequently, another provision of the fundamental law would have been abrogated. But, if discretion in this matter is vested by law in the board of tax commissioners, it must be assumed, in the absence of a showing of collusion or fraud, that the discretion has been properly exercised, and the question is, therefore, not open to determination by the court. That the tax commission is the legally qualified tribunal to determine this question was decided by this court in the former trial. Then the only question left is, Did the commission determine the question and in effect instruct the assessors of the different counties to carry out such determination?

Notwithstanding the testimony of the individual members of the board that they understood their action and communications to be advisory only, they evidently believing that, under the law, they did not have the power of direction, we think the court erred in the finding above mentioned; for it is not material whether the commission considered its instructions advisory or mandatory, or what view the members of the commission took of the law in this regard, because the construction of the law is a question ultimately to be determined by the courts. The pertinent and practical

question is what it did, and it is for the court to determine whether the advice or instruction—whatever term may be applied to it—was binding upon the assessors. The power of the commission and the duty of the assessors have been definitely determined by this court in the preceding case. We decided that it was a duty imposed by law upon the commission to give instructions and directions regarding the assessment of railroad property; so that the important question is, Were such instructions given? regardless of the views of the commissioners concerning their power to enforce such orders.

It seems conclusive to us from the instructions issued, that the commission had determined upon a scheme for the assessment of railroad property, and had classified such property to the end that uniformity of taxation should be insured; and that the assessors were notified of such a scheme and classification, and instructed to bring it into execution. It is obvious from the proceedings of the assessors' convention held in Olympia, January 16, 17, and 18, 1906, that the holding of this convention was conceived for the purpose of arriving at some harmonious course of action for the carrying out of the provisions of the law in relation to the assessment of property. Upon the invitation of the tax commission, the convention convened at the city of Olympia. The members of the state board of tax commissioners were made honorary members of the convention, and the report indicates plainly that to a marked degree they dominated the convention. A resolution was adopted at that convention establishing the rate of assessment of the right of way and the track of the several railroads in the state, according to the classification which we have set forth above. This resolution was unanimously adopted, and it was adopted we think, without doubt, in response to the suggestion of the members of the tax commission, although they were not acting as a board at that time. As indicating that the assessors understood that this was a direction from the board of tax com-

missioners, and that they were anxious to follow such directions, the following resolution was reported to the convention:

"We, your committee on valuations, have given the matter as much consideration as possible in the limited time allowed, and we recommend the adoption of the following: That we will for the 1906 assessment of both real and personal property give especial and renewed efforts to comply with the statutes as we have been advised and directed by the state board of tax commissioners."

This report of the committee was adopted; but the commissioners did not stop with the adoption of these resolutions and acknowledgment of the assessors assembled that they would obey the instructions of the commissioners, but at different times other instructions were issued, and the commission issued and mailed to each assessor in the state certain printed instructions regarding the classification and valuation of railroad property. This pamphlet was headed: "Instructions to County Assessors," and, throwing some light on what was understood to be the effect of the reports adopted by the assessors in the convention held at Olympia, the instructions commenced as follows:

"The tax commission had hoped that the stenographic report of the convention of assessors held in Olympia on January 16 and days following would be complete and cover enough ground so that it could be printed as a complete report and obviate the necessity of any extended instructions to the various assessors, but when it was received from the stenographer we found that he had misunderstood his instructions as to what would be required and had left out so much that the assessors could get no clear understanding of the views of this board on many of the subjects brought before the recent convention. We have, therefore, concluded for the purpose of making ourselves thoroughly understood to send out as instructions what in our judgment each assessor or deputy assessor will need to accomplish a just and thorough understanding of his duties, to the end that a uniform assessment may be made throughout the state."

The instructions set forth, as one of the matters which it was desired to have specially understood, the report of the committee above referred to concerning the valuation of railroads, viz., First class, $14,520 per mile, etc. In pursuance of the statement made by the commission, that in a short time the classification of railroads in each county would be sent out, on May 11, 1906, the tax commission prepared and mailed to each assessor of the state a letter, the body of which is as follows:

"Please find below classification of railroads traversing your county. This classification was made at the request of the assessors' convention, and is to be adapted to the schedule at the said convention agreed upon. You will note as to the rolling stock that first class rolling stock in said schedule is to be assessed at sixty cents per foot, first class B at fifty cents per foot, and second class at forty cents per foot. All rolling stock on classes of road below second class is to be assessed at such value as in the judgment of the assessor is right, and the assessor is to also assess all side tracks, spurs, etc., according to his best judgment."

This direction by the board, it will be seen, is in conformity with the express provisions of the law in relation to the assessment of side tracks, spurs, etc. The law imposes upon the tax commission the duty of giving instructions and directions regarding the assessment of railroad property, and it must be presumed, in the absence of proof to the contrary, that the instructions were set out in conformity with the provisions of the law and the powers conferred upon the commission. It appears from the testimony that all the assessors in the state received copies of these instructions, and that all the assessors in the state, with the exception of the assessor in Snohomish county, obeyed such instructions, and assessed the property of the appellants in accordance with the classification provided by the board of tax commissioners. This court, then, having decided upon the former trial of the cause that the tax commission had power to classify railroad property, and that it is its duty to so class-

ify and superintend its assessment, and it having directed the different assessors of the state as to their duties in the premises, there is no escaping the conclusion that the commission acted under the provisions of the law, and it was the duty of the assessor to obey such instructions.

The judgment will be reversed, with instructions to grant the injunction prayed for.

RUDKIN, C. J., PARKER, MOUNT, and CROW, JJ., concur.