GREAT NORTHERN RY. CO. v. OKANOGAN COUNTY (two cases).

(District Court, E. D. Washington, N. D.    April 10, 1915.)

Nos. 1922, 1972.

1. TAXATION ☞446½—ASSESSMENT—AUTHORITY TO MAKE ASSESSMENT—DELEGATION.

Where the state board of equalization classified railroads for purposes of taxation, and arbitrarily included in one class all railroad grades or rights of way upon which ties had not been laid or had been removed, whether the right of way had been abandoned or whether the railroad was under construction, and directed county assessors to assess such rights of way at 25 cents per lineal foot, the county officers of a county, if they deemed such instructions unjust or unequal as applied to a railroad grade and right of way lying wholly in that county, had the privilege, if not the duty, of disregarding such instructions, as the authority to value the property in the county for purposes of taxation is vested in the county officers, and they cannot shift or delegate it to any other board or officer.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 788; Dec. Dig. ☞446½.]

2. TAXATION ☞390—ASSESSMENT—RAILROADS—ELEMENT OF VALUE.

In assessing a railroad for taxation, the cost of construction or reproduction, the income, the earning capacity, and the value of stock and bonds should all be taken into consideration, but none of such elements are controlling.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 652–655, 658, 659; Dec. Dig. ☞390.]

3. TAXATION ☞543—RECOVERY OF TAX PAID—BURDEN OF PROOF.

In an action to recover the amount of a tax paid under protest on the ground that the assessment was excessive, the burden was on plaintiff to show that the tax was oppressive and illegal, and where its evidence was uncertain and inconclusive, and did not satisfy the court as to the actual value of the property, or that the assessment as made was so excessive as to give rise to an implication of fraud or mala fides, plaintiff could not recover.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1006–1016; Dec. Dig. ☞543.]

At Law. Actions by the Great Northern Railway Company against Okanogan County. Judgments for plaintiff for a part of the amount sued for, as stipulated, and for defendant as to the balance sued for.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

F. V. Brown, of Seattle, Wash., and Charles S. Albert and Thomas Balmer, both of Spokane, Wash., for plaintiff.

J. W. Faulkner and Charles A. Johnson, both of Okanogan, Wash., and C. H. Neal, of Oroville, Wash. (Francis A. Garrecht, of Spokane, Wash., of counsel), for defendant.

RUDKIN, District Judge. For some years last part the Great Northern Railway Company has been the owner of a railroad right of way extending from the town of Pateros to the town of Oroville, in Okanogan county, a distance of approximately 74 miles, upon which a railroad grade consisting of cuts and fills was constructed and completed prior to the 1st day of March, 1912. For the year 1912 the county assessor of Okanogan county fixed the value of this right of way, for purposes of taxation, at $1 per lineal foot, or $5,280 per mile. But, while the assessed value was as above stated, the true and fair value in money was fixed at double that amount, as all property in Okanogan county for the year in question was assessed at only 50 per cent. of its true and fair value. No change in this valuation was made or permitted by the county board of equalization. In due course, taxes to the amount of $13,821.46 were levied against the property thus assessed, and on the 12th day of March, 1913, these taxes were paid under protest. The present action was thereafter instituted by the plaintiff to recover back the greater part of the taxes so paid.

The validity of the taxes is assailed on two grounds; First, because, for purposes of taxation, the state board of tax commissioners of the state of Washington had fixed a valuation of 25 cents per lineal foot, or $1,320 per mile, on grades and rights of way of like character throughout the state during the same period; and, second, because the assessor and county board of equalization of Okanogan county fixed a valuation on other property, for taxation purposes, during the same year, at from 10 to 30 per cent. of its true and fair value in money, while the value of the property in question was fixed at at least five times its true and fair value in money, and this action was taken designedly by the county officers for the purpose of requiring and compelling the railway company to bear more than its just share or proportion of the burdens of taxation in the county. The complaint contains other allegations charging a wrongful assessment of a portion of the right of way as personal property, thus depriving the plaintiff of the rebate allowed by law for the prompt payment of taxes on real property; also a wrongful extension of road and school districts over the Indian reservation by the board of county commissioners; but such allegations were abandoned before the trial, except as to the question of rebates, and the foregoing statement is deemed sufficient to a proper understanding of the case as presented at the hearing.

[1] Some time prior to the month of January, 1906, the state board of equalization divided the railroads of the state into seven classes for the purposes of taxation, designated as "first class," and so on up to the "seventh class." Railroads of the fifth class were described as follows:

"All railroad grades or rights of way upon which ties have not been laid, or have been removed, shall constitute the fifth class."

A convention of the county assessors of the state, held at the state capital in January, 1906, adopted this classification and fixed the valuation of railroads of the fifth class, for the purposes of taxation, at the sum of $1,320 per mile, or 25 cents per lineal foot. The proceedings of this convention, in pamphlet form, and entitled, "Instructions to County Assessors by the State Board of Tax Commissioners," were distributed to the various county assessors, who were instructed by the state board to conform thereto. How long these instructions continued in force is a question upon which members and ex-members of the state board do not agree. Some members testified that the instructions continued in force during subsequent years, and were sent out to county assessors whenever an inquiry was made concerning the valuation of this class of property for the purposes of taxation, and tax agents of several railroads testified that the unused and abandoned rights of way belonging to their companies were assessed on this basis after 1906. Other members of the state board testified that the instructions were not observed after 1906, and it was an admitted fact on the trial of this case that entirely different instructions were given by the state board to the county assessor of Okanogan county in relation to the valuation of the property now in question for the year 1912.

But the instructions of the state board of tax commissioners are in my opinion utterly immaterial in this case. Authority to fix the value of private property in Okanogan county for the purposes of taxation is vested by law in the county officers of that county, and this authority they cannot shift or delegate to any other board or officer. The classification referred to would seem to be arbitrary and lacking in uniformity and equality at best. Why should an abandoned railroad right of way, of little or no value to the owner or anybody else, which may never again be used for railroad purposes, be valued the same as a right of way upon which a railroad is under construction, ready to receive the ties and rails? A railroad right of way of necessity increases in value daily as construction work progresses until the road is finally completed; and if the county officers of Okanogan county deemed the instructions of the state board unjust or unequal in their results as applied to this grade and right of way, in their then condition, it was their privilege, if not their duty, to disregard them. In Great Northern Railway Company v. Snohomish County, 48 Wash. 478, 93 Pac. 924, and 54 Wash. 23, 102 Pac. 881, the Supreme Court of the state held that, inasmuch as the state board of tax commissioners was empowered to exercise general supervision over assessors and county boards of equalization, to the end that assessments should be equal and uniform as between the different counties, the state board might fix the value of railroads extending through more than one county for the purposes of taxation; but that holding gives no sanction to an attempt on the part of the state board to fix or determine the value of local property wholly within Okanogan county for taxation purposes, if any such attempt has in fact been made. The validity of the taxes is therefore not affected by any action taken by the state board of tax commissioners.

[2] Before attempting to fix the value of the right of way, it might be well to inquire into its characteristics. Strictly speaking, it

is neither railroad property nor land; but it partakes more of the nature of the former than of the latter, and must be treated as railroad property for the purposes of taxation and in other cases where its value is called in question. The narrow strip contained in the right of way loses its chief value as land the moment it is severed from the adjacent tracts, and the more it is improved for railroad purposes the less valuable it becomes for other purposes. Viewed in this light, how should its value be determined? The value of a completed railroad is not easy of ascertainment. Railroads are not usually bought and sold on the open market. Their value is in use, rather than in exchange, and many elements go to make up that value. The cost of construction or reproducing, the income, the earning capacity, the value of stock and bonds, have all been taken into consideration by the courts. None of these elements are controlling, however. A railroad may cost more or less than its actual worth; its income or earning capacity may depend on the future development of the country through which it passes, and the stock market may be demoralized. And when we come to consider the value of an uncompleted railroad, without stock or bonds, without business or earning capacity, these difficulties are greatly enhanced. Perhaps, in the absence of any showing to the contrary, taxing officers and courts have a right to presume that the railroad company is engaged in a legitimate business enterprise for gain, and that the right of way and grade are worth the money invested in them up to any given point of time. Thus, in State v. Central Pac. Co., 10 Nev. 47, 74, Mr. Justice Beatty says:

"To determine the value of a railroad, then, the very first inquiry is as to its actual cost. That, prima facie, is its value. But if it appears that the actual cost was in excess of the necessary cost, the necessary cost is the proper standard. If it further appears that the net income of the road does not amount to current rates of interest on its necessary cost, and is not likely to do so, or if the business of the road is likely to be destroyed or impaired by competition or other cause, or, in short, if the utility of the road is not equal to its cost, then its value is less than its cost, and must be determined by reference to its utility alone."

[3] Such being the elements that go to make up the value of railroad property, what is there in the record in this case to guide the court to a correct conclusion? The county assessor of the defendant county testified that he applied to the state board of tax commissioners and to the plaintiff company for data and information concerning the value of the property, but received no aid from these sources. He then resorted to some engineering guide or handbook, showing the average cost per mile of the right of way and grade of the plaintiff company in this state and of other railroads in other states, and from this determined that the true and fair value, in money, of the right of way and grade in question, was approximately $2 per lineal foot. On 50 per cent. of this he based his assessment. I refer to this testimony without criticizing or approving the course pursued, because the court is concerned with results rather than with methods. It only goes to show the uncertain basis upon which the valuation was fixed by the county in the first instance. The burden of proof

was upon the plaintiff, however, to show that the tax was oppressive and illegal, and the testimony produced by it was equally uncertain and equally inconclusive. Three witnesses testified in its behalf, fixing the value of the right of way and grade at perhaps less than 25 per cent. of that fixed by the county authorities; but none of these witnesses qualified as experts on the value of property such as I hold this to be, and apparently could not so qualify. The record further shows that their opinion or estimate was based upon a comparison between the land embraced in the right of way and other adjacent lands, and that their opinion was controlled largely, if not entirely, by the value they placed on adjacent lands of like kind and quality. If their premise was false, their conclusion was erroneous, and the court finds itself wholly unable to say from the testimony adduced what the actual value of the property was on the 1st day of March, 1912, or that the assessment as made was so excessive as to give rise to an implication of fraud or mala fides.

The plaintiff is therefore entitled to no redress beyond a recovery of the rebate on a portion of the taxes paid, as stipulated at the trial. The conclusion here reached also disposes of case No. 1972 between the same parties, submitted on the same record.

Let findings and judgment be entered accordingly.