GEORGE E. WALLACE, H. H. Steele, and F. E. Packard, as Members of the Tax Commissioners of the State of North Dakota, Petitioners and Respondents, v. THE HUGHES ELECTRIC COMPANY, R. W. Dutton and C. B. Aasness, and E. A. Hughes, Defendants and Appellants.

(171 N. W. 840.)

**Taxation — power of state tax commission.**

1. The state tax commission, being a board created by legislative enactment, possesses such powers only as the legislature has expressly conferred upon it.

**Taxation — state tax commission — limited powers.**

    2. The power conferred upon the state tax commission by subdivision 7 of § 2088, Compiled Laws 1913, to summon witnesses to appear and give testimony and produce records, books, papers, and documents is not an arbitrary or unlimited power, but one to be exercised reasonably and within proper limits.

**Taxation — state tax commission — power to summon witnesses — jurisdiction of tax commission.**

    3. In order to justify the entry of an order by a district court, under § 2089, Compiled Laws 1913, to compel obedience to an order of the state tax commission for the appearance of witnesses and the production of records, books, and documents, it must appear that the order was made in some matter before, and within the jurisdiction of, the tax commission, and that there was some reasonable basis for the action of the tax commission.

**Taxation — state tax commission — summoning witnesses — petition to district court to compel attendance of witnesses.**

    4. It is *held* that the petition in the instant case fails to state facts sufficient to justify the entry of an order, by a district court, to compel witnesses to appear and give testimony and produce records, books, and documents before the state tax commission.

Opinion filed January 31, 1919.

From an order of the District Court of Burleigh County, *Nuessle, J.* Reversed.

*Newton, Dullam, & Young,* for appellants.

Commissions such as the tax commission of North Dakota are mere creatures of the statute, and possess no power except what the statute expressly confers upon them. Railroad Comrs. v. Oregon River & Nav. Co. 17 Or. 85, 2 L.R.A. 195, 19 Pac. 702; Grand Rapids, Indiana R. Co. v. Michigan R. Commission (Mich.) 150 N. W. 154; Mechem, Pub. Off. § 511.

The tax commission has no power to assess the property of light, heat, and power plants. State ex rel. Miller v. Leach, 33 N. D. 513, 157 N. W. 492.

A legislative body cannot inquire into the private affairs of a citizen merely to suit the whims and fancies of the curious, and where it may not inquire it may not compel the attendance of witnesses and punish for their refusal. Kilbourn v. Thompson, 26 L. ed. 377–387.

The inspection of records must be limited to what is material in ascertaining the knowledge desired. Hale v. Henkel, 201 U. S. 43, 50 L. ed. 652, 666; Ex parte Brown, 72 Mo. 83, 37 A. R. 426.

If an act of the legislature is so vague and uncertain in its terms as to convey no meaning, or if the means for carrying out its provisions are not adequate or effective, it is incumbent on the courts to declare it void and inoperative. Hilbourn v. St. Paul etc. R. Co. 23 Mont. 229, 58 Pac. 515; State v. Westside R. Co. 146 Mo. 155, 47 S. W. 959.

The order for the production of books and papers may constitute an unreasonable search and seizure within the 4th Amendment. Hale v. Henkel, 50 L. ed. 666, supra; Gulf, C. & S. F. R. Co. v. Ellis, 165 U. S. 154, 41 L. ed. 667; Barbier v. Connolly, 113 U. S. 27, 28 L. ed. 928.

The courts will not enforce an order which a commission has no authority to make, or which, under the circumstances of the particular case, was unreasonable or unjust. State v. Des Moines etc. R. Co. 87 Iowa, 644, 54 N. W. 461; State v. Chicago etc. R. Co. 26 Iowa, 304, 53 N. W. 253; Railway Co. v. State, 23 Okla. 931, 100 Pac. 16; Railway Co. v. Railway Commission, 52 Wash. 360, 28 L.R.A.(N.S.) 1023; State v. Kansas C. R. Co. 47 Kan. 497, 29 Pac. 208; Nashville, C. & St. L. R. Co. v. State, 137 Ala. 439, 34 So. 401.

*William Langer,* Attorney General, and *Edw. B. Cox,* Assistant Attorney General, for respondents.

The supervisory powers, as well as the powers of review and reassessment, as granted to the tax commission, is constitutional. State ex rel. Hessey v. Daniels, 143 Wis. 649; Great Northern R. Co. v. Snohomish County, 48 Wash. 478; People v. Kinney, 124 Mich. 491; Ames v. People, 26 Colo. 83; State ex rel. Brown v. Meyers, 52 Wis. 626; State ex rel. Fawcett v. Harris, 1 N. D. 594, 45 N. W. 1102; Ex parte Corliss, 16 N. D. 470.

As to what powers are conferred by "general supervision." Vantongeran v. Heffern, 5 Dak. 180, 38 N. W. 52; Moore v. Robbins, 96 U. S. 530; Sheply v. Cowan, 91 U. S. 340; Great Northern R. Co. v. Snohomish County, 48 Wash. 478.

An order by a court to produce certain books and papers in a civil action cannot be refused on the ground that it violates the constitutional provisions against unreasonable search and seizures. Adams v.

New York, 192 U. S. 585, 48 L. ed. 575, 24 Sup. Ct. Rep. 372; Consolidated Rendering Co. v. Vermont, 207 U. S. 541; Re Dunn, 9 Mo. App. 255; Cooperative Bldg. & L. Asso. v. State, 156 Ind. 463, 60 N. E. 146; Washington Nat. Bank v. Daily, 166 Ind. 631, 77 N. E. 53; Sante Fe P. R. Co. v. Davison, 149 Fed. 603; Anti-Kalsomine Co. v. Kent, 79 N. E. 186; Re Moser, 101 N. W. 588; Re Conrades, 85 S. W. 150; People v. Combes, 158 N. Y. 532, 53 N. E. 527; Interstate Commerce Commission v. Brimson, 154 U. S. 447.

The power of the legislature to delegate the right to quasi judicial or administrative bodies to compel witnesses to attend and testify before them has been exercised by almost every state in the union. 40 Cyc. 2156; 10 Ohio S. & C. P. Dec. 574; 8 Ohio N. R. 205; 10 Ohio Dec. Reprint 90; 18 Ohio L. J. 340; 117 S. W. 508.

CHRISTIANSON, J. This is an appeal from an order of the district court of Burleigh county commanding the appellants, Dutton, Aasness, and Hughes, to appear before the state tax commission and give testimony and produce books and records relating to the value of the property, the earnings, expenses, and general financial condition of the Hughes Electric Company.

The powers and duties of the state tax commission are defined by § 2088, Comp. Laws 1913, as amended by chapter 232, Laws 1917. The statute, so far as now pertinent, is as follows:

"It shall be the duty of the commission and it shall have the power and authority:

"1. To have and exercise general supervision over the administration of the assessment and tax laws of the state, over assessors, town, county and city boards of review and equalization and all other assessing officers in the performance of their duties, to the end that all assessments of property be made relatively just and equal in compliance with the laws of the state.

"2. To confer with, advise and give the necessary instructions and directions to local assessors as to their duties under the laws of the state and to that end call meetings of local assessors of each county to be held at the county seat of such county, for the purpose of receiving necessary instructions from the commission relative to the duties of their office and to the laws governing the assessment and taxation of all classes of property.

"5. To require township, village, city, county and other public officers to report information as to the assessment of property, collection of taxes, receipt from licenses and other sources, the expenditure of public funds for all purposes and such other information as may be needful in the work of the commission in such form and upon such blanks as the commission may prescribe.

"6. To require individuals, copartnerships, companies, associations and corporations to furnish information concerning their actual funds or other debts, current assets and liabilities, value of property, earnings operating and other expenses, taxes and all other facts, which may be needful to enable the commission to ascertain the value and relative burdens borne by all kinds of property in the state.

"7. To summon witnesses to appear and give testimony and to produce records, books, papers and documents relating to any matter which the commission may have authority to investigate or determine.

"8. To cause the deposition of witnesses residing within or without the state or absent therefrom to be taken upon notice to the interested party, if any, in like manner that depositions of witnesses are taken in civil actions in the district court in any matter which the commission may have authority to investigate or determine.

. . . . . . . . . . . . . . . . . .

"10. To appoint a special assessor and deputies under him and cause to be made in any year a reassessment of all or any real and personal property or either in any assessment district when in the judgment of said commission such reassessment is desirable or necessary to the end that any and all property in such district shall be assessed equally as compared with like property in the county wherein such district is situated. Upon the completion of such reassessment the said assessor shall certify to such assessment and file the same with the county auditor, and the county auditor shall forthwith notify the members of the board of county commissioners who shall meet the first Monday in the following month of the year and then and there hear all grievances and complaints thereon, and proceed to review and equalize such assessments. Thereupon the said assessment shall be filed with the county auditor and such lists shall supersede and be in place of the original assessment made for such year upon such property and the county auditor shall extend and levy against said property so reassessed

the taxes thereon for such year according to such reassessment in the same manner as though such list was the original assessment list of such property.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"13. To examine carefully into all cases where evasion or violation of the laws for assessment and taxation of property is alleged, complained of, or discovered, and to ascertain wherein existing laws are defective, or are improperly or negligently administered.

"14. To consult and confer with the governor of the state upon the subject of taxation, the administration of the laws in relation thereto, and the progress of the work of the commission, and to furnish the governor from time to time such assistance and information as he may require."

(The omitted subdivisions of the section are not involved in this controversy.)

Section 2089, Comp. Laws 1913, provides: "Oaths to witnesses in any matter under the investigation or consideration of the commission may be administered by the secretary of the commission, or by any member thereof. In case any witness shall fail to obey any summons to appear before said commission, or shall refuse to testify or answer any material question, or to produce records, books, papers, or documents when required to do so, such failure or refusal shall be reported to the attorney general, who shall thereupon institute proceedings in the proper district court to compel obedience to any summons or order of the commission, or to punish witnesses for any such neglect or refusal. . . ."

This is a proceeding instituted by the attorney general of the state under § 2089, supra, to compel the appellants, Dutton, Aasness, and Hughes, to appear and testify before the state tax commission, and to produce certain books and records relating to the property, earnings, expenses, and financial condition of the Hughes Electric Company,— a public utility corporation, organized under the laws of the state of Minnesota, and engaged in the business of furnishing electricity and other commodities to the public in the city of Bismarck, and elsewhere.

The attorney general's petition in this case avers that the petitioners are members of the state tax commission, and that in performance of their powers and duties as such commissioners, as prescribed by §

2088, Comp. Laws 1913, and the amendments thereof, "the said tax commission for the purpose of ascertaining and securing the information concerning the value of the property of the Hughes Electric Company, and the capital fund, debts, current assets, and liabilities, and operating and other expenses of such company, and such facts as might be needful to enable the commission to ascertain the value of the property of such Hughes Electric Company as provided by law, and for the purpose of performing their duties as members of such tax commission as prescribed by law," in April, 1917, prepared and mailed to the Hughes Electric Company a notice commanding said company to have its managing officers appear before said tax commission "at a stated time and place," and then and there to testify as to the value of the property, the earnings and general financial conditions of said company, and to "bring with them such books, papers, and records as may be necessary to consult, or determine the above matters with reference to said company."

It is further averred that the Hughes Electric Company, and its managers and officers, refused and neglected to appear before the tax commission, or produce the books, papers, and documents, as directed in said notice.

The petition further avers that the state tax commission, in May, 1917, issued a subpœna or subpœnas addressed to the above-named appellants, Dutton, Aasness, and Hughes, commanding them and each of them, to appear before the state tax commission, at a designated time and place, and "then and there to testify generally before the said commission as provided for in §§ 2088 and 2089 of the Compiled Laws of 1913 for the state of North Dakota as to such matters and things as you have knowledge of concerning the actual value of the property, the earnings and general financial condition of the Hughes Electric Company, a corporation, doing business in the city of Bismarck, county of Burleigh, and state of North Dakota." And further commanding said Dutton, Aasness, and Hughes, to bring with them at the time and place stated in said subpœna "the minute book, ledger, stock book, blue prints or books of engineering department, showing the extent, location, and the cost of the physical property, and such other records of said Hughes Electric Company as may be necessary

to determine the actual value of the property, earnings and general financial condition of said corporation."

It is further averred that said respondents, Aasness, Dutton, and Hughes, failed to obey the commands of said subpœna or subpœnas, and that "it is necessary and proper, and that it is the duty of such tax commission as prescribed by law to inquire into the capital stock, debts, current assets, and liabilities, the value of the property, the earnings and the operating expenses and other expenses, its taxes, and all facts concerning such company needful to enable the commission to ascertain the value of the property of such Hughes Electric Company, in order that it may fulfil its functions and duties as prescribed by law, in order that it may properly cause to be assessed and make recommendations of assessment, all concerning such Hughes Electric Company."

The petition further avers that the said state tax commission has reported to the attorney general the failure of the respondents to obey the said notice and subpœnas.

In the return and answer it is admitted "that on the 19th day of May, 1917, there was served upon the above-named respondents Aasness and Dutton an alleged command to appear before said tax commission on the said day at 2 o'clock P. M., . . . that said service was made about 1:45 o'clock P. M. of said day." And it is averred "that said respondents did not have access to any books, papers, or records of the Hughes Electric Company, except the customer's register thereof; . . . that they have been in the employ of said company only a short time and then were and now are without knowledge or information as to the value of the property, earnings, and general financial condition of said company, or the contents of the general records thereof."

It is further averred that "said Hughes Electric Company is a foreign corporation with its principal office at Minneapolis, Minnesota; and that its books, papers, and records, except the blue prints of its equipment and pipe lines and its current customer's register, are, and at all times since its organization have been, kept at its said principal place of business."

It is further averred that "said tax commission, its inspectors, engineers, and agents, were given access to the property, machinery, and

equipment of said Hughes Electric Company; and that they have been enabled thereby to secure all of the information and data necessary and requisite · to determine the value of such property, machinery, and equipment." And also "that the property of said corporation has been assessed for the year 1917 by the city assessor of the city of Bismarck; that the respondent company, its officers, and managers, showed to such assessor the blue prints and engineering records of said company, and furnished him with all the data, facts, and information demanded and required by him for the purpose of making such assessment."

The answer denies that it is necessary and proper, or the duty of the tax commission, to make the proposed inquiry, and in that behalf alleges that the tax commission is without authority to make assessment of the property of the Hughes Electric Company.

It is also averred that the orders of the tax commission are unreasonable, arbitrary, and void, and that such orders and subdivisions 7 and 8 of § 2088, Comp. Laws 1913, are violative of § 18 of the state Constitution and the 4th Amendment to the Federal Constitution, which guarantee to the people the right to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

The answer also avers that the attorney general's petition does not state facts sufficient to justify the issuance of an order or writ to compel the respondents to testify or produce books, papers, and documents as demanded by said tax commission.

The trial court ordered that E. A. Hughes, Robert W. Dutton, C. B. Aasness, and each of them, appear before the tax commission on the 27th day of November, 1917, at 2 P. M., of same day, then and there to testify as to such matters as they may have knowledge of, concerning the value of the property, earnings, expenses, and general financial condition of the Hughes Electric Company, and to bring with them at said time and place the minute book, ledger, stock book, inventory book, and blue prints or books of the engineering department, showing the location and the cost of the physical property of the Hughes Electric Company. And the case comes to this court on appeal from such order.

The first question which naturally presents itself is whether a case is presented which falls within the above-quoted statutory pro-

visions, and justified the trial court in entering the order appealed from.

It is a constitutional mandate in this state that "all taxable property" (except the property of railroads, express companies, freight line companies, car equipment companies, private car line companies, telegraph or telephone companies or corporations, which is assessed by the state board of equalization) "shall be assessed in the county, township, village, or district in which it is situated, in the manner prescribed by law." Const. § 179, as amended. The uniform and unbroken policy has been to have all taxable property (except that assessed by the state board of equalization) assessed by local assessors, and to have the assessment reviewed and equalized in the first instance by the board of the township, village, or city wherein the property assessed is situated. And for more than twenty years a system has been in vogue in this state "whereby the local boards of review, where there are such boards, shall equalize the assessments as between individual taxpayers, the county board of equalization as between the several assessment districts, and the state board of equalization between the several counties." First Nat. Bank v. Lewis, 18 N. D. 390, 121 N. W. 836. This system was not abrogated by the creation of the state tax commission. In fact the very language of the act creating the commission and defining its duties and powers recognizes the existence and continuation thereof, and the continued performance of their respective duties by the former taxing and reviewing officers. It is still the duty of the assessors to assess, and of the different boards of review to review and equalize the assessments within their respective jurisdictions.

It is true (and the attorney general lays great stress on this fact) certain supervisory powers are conferred upon the tax commission by subdivision 1 of § 2088, Comp. Laws 1913. But the attorney general's petition herein does not present a case wherein the tax commission seeks to exercise supervision over assessing officers.

No assessing officer or reviewing board is a party to this proceeding, nor is there any allegation of failure or neglect of duty on the part of any such officer or board.

The reason assigned for the proposed inquiry is that it is "needful to enable the Commission to ascertain the value of the property of such Hughes Electric Company in order that the commission may ful-

fil its functions and duties as prescribed by law, and in order that it may properly cause to be assessed and make recommendations of assessment all concerning such Hughes Electric Company."

The proceeding was instituted in July, 1917, and the order appealed from was made November 12, 1917. Hence, the property of the Hughes Electric Company must have been assessed by the assessor for the year 1917 before the proceeding was instituted, and all proceedings relating to such assessment, including the proceedings before the county and state boards of equalization, must have been fully completed before the order was entered. And yet there is not even a suggestion in the petition (or in the record at all), that the assessor or any board of review has failed to perform his or its duty, that the property has escaped taxation, or that there has been any complaint or discovery of evasion or violation of the laws relating to assessment.

It may also be noted that there is nothing in the attorney general's petition to indicate that Hughes, Dutton, or Aasness have any connection whatever with the Hughes Electric Company, or that it is in any manner within their power to produce any of the books, papers, and documents sought. So far as the showing made by the attorney general is concerned, these men may be total strangers to and have no connection whatever with the Hughes Electric Company. It is true there are certain statements in the answer which indicate that Dutton and Aasness are employed by the company, but there is nothing to indicate in what capacity they are employed, and it is positively averred that they "did not have access to any books, papers, or records of the Hughes Electric Company," which the order appealed from commanded them to produce. And it is further averred that they were and are "without knowledge or information as to the value of the property, earnings, and general financial condition of said company or the contents of the general records thereof."

While the legislature may confer authority upon a nonjudicial body to summon witnesses and require the production of books and records in a proceeding properly pending before, and within the jurisdiction of, such body, it is scarcely necessary to say that the lawmaking power is limited by the constitutional restrictions, and that the legislature may not itself exercise, still less confer upon any merely administrative body, "a general power of making inquiry into the private

affairs of the citizen," or otherwise destroy or impair those fundamental personal rights guaranteed and "recognized by the Constitution as inhering in the freedom of the citizen." Interstate Commerce Commission v. Brimson, 154 U. S. 447, 479, 38 L. ed. 1047, 1058, 4 Inters. Com. Rep. 545, 14 Sup. Ct. Rep. 1125. Our state Constitution contains counterparts of the guaranties of personal rights contained in the Federal Constitution.

The state tax commission was created by legislative enactment. It is elementary that a board so created possesses such powers only as the legislature has expressly conferred upon it. Railroad Comrs. v. Oregon R. & Nav. Co. 17 Or. 65, 2 L.R.A. 195, 19 Pac. 702; Miller v. Oakwood Twp. 9 N. D. 623, 84 N. W. 556.

It will be noted that the statute under consideration makes no provision either that the testimony given or books and records produced before the tax commission shall be guarded with secrecy, or that such testimony or evidence shall not be used in any criminal proceeding, against the person required to adduce it. Such guaranties are usually found in laws permitting inquiries into private business affairs. The very absence of such restrictions in the statute under consideration is indicative that the legislature must have intended that the power conferred should be exercised only in some matter or proceeding properly pending before the commission, and that the scope of inquiry should be reasonable, restricted to the particular matter under consideration, and in no case infringe upon any of the inherent personal rights recognized by the Constitution.

Manifestly the legislature did not intend to invest the tax commission with arbitrary power. It clearly contemplated that the power conferred should be exercised, not capriciously or arbitrarily, but with reason.

In other words the legislature intended that there should be some reasonable basis for an order of the tax commission summoning witnesses to appear and testify and produce books, records, and documents.

The petition (and record) in the case at bar fails to disclose any basis for the proposed inquiry. There is nothing asserted in the petition in this case which might not with equal force and at all times be asserted against any, or every, taxpayer in the state. If the tax com-

mission had the power to require the attendance of witnesses and the production of books and documents under the facts set forth in the petition in this case, it unquestionably has the power to issue similar orders, and conduct similar inquiries with respect, to every taxpayer in the state, regardless of whether there is any reason whatsoever for such action.

The order appealed from must be reversed. It is so ordered.

The foregoing opinion was prepared while former Chief Justice BRUCE was still a member of the court, and he concurred in the opinion in its entirety. Mr. Justice BRONSON, who succeeded Judge BRUCE as a member of this court, being disqualified, Judge CRAWFORD of the Tenth Judicial District was called in and sat as a member of the court upon the final disposition of the case. Judge CRAWFORD also concurred in the opinion in its entirety.

ROBINSON, J. I concur in the rules announced in the syllabus. The tax commission holds office under an act which is entitled "An Act Creating a Permanent Tax Commission Defining Its Powers and Duties and Making Appropriations for the Maintenance thereof." Laws 1911, chap. 303. The title of the act is in all respects similar to that of an act creating the office of a board of state auditors and prescribing the duties thereof. The latter act was justly held void because the subject of the act was not expressed in its title. State ex rel. Standish v. Nomland, 3 N. D. 427, 44 Am. St. Rep. 572, 57 N.W. 85.

In 1917, the legislature re-enacted that part of the act which relates to the powers and duties of the tax commission. Chap. 232. The act declares that the tax commission shall have power to require individuals, corporations, companies, associations and corporations to furnish information concerning their actual funds or other debts, current assets, and liabilities, value of property, earnings, operating and other expenses, taxes, and all other facts which may be needful to enable the commission to ascertain the value and relative burdens borne by all kinds of property in the state. Also to summon witnesses to appear and give testimony and procure records, books, papers, and documents relating to any matter which the commission may have authority to investigate and determine.

This is an appeal from an order of the district court, which is that on November 27, 1917, the defendants do appear before the tax commission at their office in the capital to testify concerning the value of the property, earnings, expenses, and general financial conditions of the Hughes Electric Light Company and to bring with them the minute books, ledger, stock books, inventory books, and blue print books of the company showing the location and cost of the property. Now under the Constitution the property of every party must be assessed for taxation in the county and city where it is situated, and the assessment must be made in the manner prescribed by law. There can be no valid assessment without a law prescribing the manner of making it, and unless it is made in the manner prescribed.

There is no claim that in the year 1917 the property of the company was not fairly assessed for taxation and equalized in the manner prescribed by law, or that the proper boards of equalization failed to approve of the assessment and to accept the same as a basis for the tax levies of the year 1917. There is no showing, either in the complaint or in the order of the court or elsewhere, that the investigation demanded and ordered has any legitimate and necessary purpose and object. For aught that appears, it may be for the purpose of satisfying the idle curiosity of the commissioners. True, it is alleged that the information sought is necessary in order that the board may fulfil its functions and duties, and that it may cause the property to be assessed and make necessary recommendations concerning the assessment of the property, but that is a mere conclusion which is not sustained by any statement of facts.

The order of the court is that on November 27, 1917, the defendants appear before the tax commission to testify to the value of the property, expenses, earnings, and general financial conditions of the company at said time, and to produce the minute books, ledger, stock books, inventory books, blue prints or books of the engineering department, showing the location and cost of the property. It needs no argument to show that any such a procedure must be harassing and vexatious, inquisitorial and expensive. To enforce the order would be to deprive the defendants of their time and property in an arbitrary manner without any compensation and without due process of law.

Time is money. Money is property. To deprive a man of his time

is to deprive him of his property. Under such an order the examination of defendants might be continued from day to day until the loss of their time and business would amount to hundreds of dollars, and their valuable books and papers might be detained indefinitely to their great loss. For it is well known that like the Irish policeman, all those boards are inclined to show and to exceed their authority. "There is too strong a desire in the human heart to exercise authority." Every administrative board is well disposed to exceed its authority.

By the Constitution the defendants are guaranteed the right to acquire, possess, and protect property, and to pursue and obtain liberty and happiness, and to hold their books and papers without unreasonable searches and seizures. But what avails the guaranty if it may be countervailed by such an order on defendants to quit their business, and with the books and papers to appear and waste their time and money undergoing a bootless and vexatious examination by the tax commission.

So far as the statute gives the commissioners power to demand such an examination it is void. Clearly the order to produce the books and papers is not based on any legal or reasonable cause, and the order is void because it is in direct conflict with the constitutional rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. In many cases people would prefer to burn their books or to keep no books, rather than to hold them subject to such an inspection and examination. Of necessity the tax system is burdensome, but there is no reason for making it vexatious.

At the rush close of every session, with no thought of the Constitution, the legislature passes bills to create boards for this and for that and to expend the public moneys. And every board does magnify its office and authority. Hence, it behooves the courts, with a strong hand, to sustain the guaranties of personal rights and civil liberties.

The order should be reversed and the case dismissed.

BIRDZELL, J. (dissenting). I dissent from the conclusion reached by the majority of the court in this case, and, owing to the importance of the main question involved, I deem it a duty to set forth the reasons for my dissent.

As I read the majority opinion, it is founded upon a misapprehension of the powers and duties of the tax commission that is so gross and so far reaching as to amount to the practical nullification of the obvious purposes which the legislature had in view in providing for the creation of the commission. In order to make clear the reasons for my dissent, it is necessary to advert to the character of the proceedings in the instant case. The petition shows that in April of the year 1917, the tax commission, in pursuance of the powers and duties expressly imposed upon it by law, attempted to obtain from the Hughes Electric Company of Bismarck information relative to the value of its property, its earnings and financial condition, which the legislature had made it the duty of the commission to obtain. The means selected for the communication of this information was that of asking the managing officer of the company to appear before the commission at a stated time, in the Capitol Building, there to testify to the facts within the range required by the statute. This court should, and doubtless does, take judicial notice of the fact that the Hughes Electric Company operates in the capital city, and of the degree of inconvenience that would be involved in complying with the request made by the tax commission. The petition further shows noncompliance with this request, and that thereafter, on the 19th day of May, a summons and subpœna was served on the respondents Aasness and Dutton, and that on the 21st day of May, still during the assessment season, a summons and subpœna was served on the respondent Hughes. It is also alleged that all of the respondents have neglected and refused to appear before the commission at the time and place stated in the summons and subpœna, or at all. "And that the Hughes Electric Company, its managers and officers, wilfully and wrongfully refuse and neglect to appear before such tax commission, *or to in any manner submit to an investigation by such tax commission, concerning its capital fund, its current assets and liabilities, the value of its property and earnings, its operating expenses, or to submit any other facts which might be needful to enable the said tax commission to ascertain the value of the property of the said Hughes Electric Company."*

The petition contains further allegations to the effect that during the period and at the times when the petitioners sought, as herein above indicated, to obtain the desired information from the respond-

41 N. D.—28.

ents, it was in regular session as required by law and engaged in the performance of the duties imposed upon it, among which is that of requiring individuals, partnerships, companies, associations, and corporations to furnish information concerning their capital stock, the earnings, and the operating expenses and other expenses, its taxes, and all facts concerning such company needful to enable the commission to ascertain the value of all kinds of property in the state; also that the information was needed to enable the commission to ascertain the value of the property of the Hughes Electric Company and that it was required in order that the commission might "fulfil its functions and duties as prescribed by law, and in order that it may properly cause to be assessed and make recommendations of assessment" of such property. Such are the allegations of the petition. The answer denies the ability of the respondents Aasness and Dutton to respond to the subpœna duces tecum, and denies further "that it is necessary and proper, and the duty of the said tax commission, to inquire into the capital stock, debts, current assets, and liabilities, value of the property, earnings, operating expenses, and other expenses of said corporation to fulfil its functions and duties as prescribed by law, or for any other purposes, or at all;" and it is alleged that the property "has been asesssed for the year 1917 by the city assessor of the city of Bismarck; that the respondent company, and it officers and managers, showed to such assessor the blue prints and engineering records of said company, and furnished him with all of the data, facts and information demanded and required by him for the purpose of making such assessment;" also that the agents of the tax commission were given access to the property, machinery, an equipment of the Hughes Electric Company; and "that they have been enabled thereby to secure all of the information and data necessary and required to determine the value of such property, machinery, and equipment." It is further alleged that the respondents have been and are ready and willing to furnish to the proper assessing officer of the city of Bismarck all the data and information reasonably necessary to make an assessment of the company. It is then alleged and contended that the sections of the statute under which the tax commission proceeds to summon witnesses are unconstitutional, and that the orders and commands of said tax commission are unreasonable, unjust, arbitrary, and void, and violative of

§ 18 of the Constitution of this state and the 4th and 14th Amendments of the Constitution of the United States. The issues framed by the petition and the return were before the lower court and were resolved in favor of the petitioners. The petition, the return, and the order constitute the entire record upon this appeal.

The majority opinion decides upon this record that there is no real or apparent reason or no reasonable basis for the order entered by the lower court. This seems to be the sole basis for the reversal of the order. To me it is inconceivable that such a conclusion upon such a record can be in the least consistent with the ordinary exercise of the powers granted to the tax commission by the legislature, and, in my judgment, it constructs all but an insuperable barrier to the performance by the tax commission of the duties clearly imposed upon it. The opinion seems to presuppose that the order is harsh and supports unnecessary inquisitorial power, or a power only to be resorted to in extreme cases. As a matter of fact, the order only requires the respondents to impart information which it is only fair to presume similar corporation managers have done without hesitation. It is manifestly no more inquisitorial in its nature than a request for the filling out of a blank form which, when completed, would contain the information demanded. Aside from the mere matter of convenience, there can be no distinction between requesting information to be supplied upon a blank furnished by the tax commission and requesting that it be supplied from the personal knowledge of those who may be possessed of the information (refreshed and supplemented by records regularly kept), and who are asked to communicate that information verbally instead of in writing. The petition clearly shows that ample opportunity was afforded to the respondents to furnish the information, and that they did not do so; and the respondents do not even argue that they should not be required to furnish the information in the manner requested because of the inconvenience entailed. It is, however, contended that the books of the respondents are in the state of Minnesota, consequently outside the jurisdiction of this state. This contention goes to the legal power only. Inasmuch as the majority opinion does not discuss that question, I leave it untouched. No argument is advanced that could not likewise be advanced by any individual, partnership, or corporation that might

be requested to supply such information by filling out a blank. The appellants in effect contend that the tax commission has no business with such information, and the majority opinion in effect sustains this contention. It the tax commission has not the right to have this information from the defendants, clearly they have not the right to obtain it from others. We should bear in mind that the action of tax officers as well as other officers is clothed with the ordinary presumption of good faith and honest official intention. See Barnes v. Wayne County, 194 Mich. 540, 161 N. W. 237. And it is not to be presumed that a tax officer vested with inquisitorial power "would desire to inquire into the private affairs of the citizen for any other purpose than those connected with his official duty." Stanwood v. Green, 2 Abb. U. S. 184, Fed. Cas. No. 13,301.

The vital question is whether or not the legislature intended that the tax commission should obtain information of this particular character. The wisdom of leaving to the legislature a large discretion not only in the selection of the subjects of taxation and in the determination of the extent, but also in the mode, of enforcement, has, I believe, been seldom if ever questioned since the decision of the Supreme Court of the United States in M'Culloch v. Maryland, 4 Wheat. 316, 4 L. ed. 579; and the impropriety of judicial interference with, or supervision over, administrative agencies, acting under legislative direction, is everywhere recognized. Said Chief Justice Marshall, in M'Culloch v. Maryland (page 639): "The power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. . . . We are not driven to the perplexing inquiry, so unfit for the judicial department, what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power."

Under the Tax Commission Law the supervisory power of the tax commission is analogous to that of the commissioner of internal revenue of the Federal government, and is expressed in the statute in much the same language as the powers and duties of that officer are expressed in the Federal statutes. In the case of Stanwood v. Green, supra, it was said: "It is further provided that it shall be the duty of the supervisor, under the direction of the commissioner, to see that all laws and regula-

tions relating to the collection of internal taxes are faithfully executed and complied with; to aid in the prevention, detection, and punishment of any frauds in relation thereto; and to examine into the efficiency and conduct of all officers of internal revenue within his district; and for such purposes he shall have the power to examine all persons, books, papers, accounts, and premises, and to administer oaths, and to summon any person to produce books and papers and to appear and testify before him." In speaking of this power, the Federal court said: "That there exists a necessity for taxation, and to a very large amount, is not denied. That the amount, the subjects of taxation, and the mode of assessing and collecting the same, are questions alone to be determined by Congress, the lawmaking power, and with which the courts have nothing to do, it being their duty to expound and enforce the laws, is also admitted. It was competent for Congress to provide for the appointment of such officers as might be deemed necessary for the collection of the revenue, and to prescribe their duty." The court, then, after referring to the powers above named, under three distinct heads,—those of (1) seeing that the laws are faithfully executed and complied with; (2) preventing and punishing frauds; (3) examining into the efficiency and conduct of revenue officers,—continues: "And to enable him to perform any one or all of these duties, he is invested with these extraordinary powers, as they are termed, without which he would be unable to perform the duty assigned him." The court held that the act was constitutional, and that under it the respondents were compellable to produce their books and papers *without having disclosed to them the purpose for which the inspection was had.* See also Re Strouse, 1 Sawy. 605, Fed. Cas. No. 13,548, and Re Meador, 1 Abb. U. S. 317, Fed. Cas. No. 9,375. The first paragraph of the syllabus in the latter case is as follows: "It is not necessary, in order to support an application by a supervisor of internal revenue, or an attachment to compel a person liable to taxation to appear and testify and produce his books, etc., that the supervisor should appear to have acted, in issuing the summons, under any special instructions from the Commissioner of Internal Revenue. The supervisor must obey any special instructions which are shown to have been given, but, in the absence of proof of instructions, it will be presumed that his acts have been in pursuance of his official duty."

In the case of State ex rel. Hessey v. Daniels, 143 Wis. 649, 128 N. W. 565, the supreme court of Wisconsin upheld the power given to the tax commission to reassess the property of a particular assessment district, and, in explaining the theory upon which a state administrative agency is justified, says: "The state has a vital interest in insisting that its laws pertaining to taxation be honestly and fairly administered to the end of that the burden of taxation may be equitably distributed. . . . So, the state, in endeavoring to enforce the requirements of the law in regard to the assessment and equalization of property, is not acting as a mere interloper exercising a paternalistic function for the purpose of exploiting its right so to do, but is attempting in good faith to perform a duty in which its citizens, generally, have something more than a passing interest." See also Great Northern R. Co. v. Snohomish County, 54 Wash. 23, 102 Pac. 881. Surely it is competent for the legislature to give inquisitorial powers to a board of this character as extensive as those given to assessors. It has been held that assessors may compel banks to disclose cash registers, draft registers, personal accounts, and individual ledgers showing the accounts of its patrons in the interest of securing a just valuation for taxation of all property. Washington Nat. Bank v. Daily, 166 Ind. 631, 77 N. E. 53.

The majority opinion seems to intimate that if some character of proceeding were pending before the tax commission, it might possibly be entitled to obtain information in the manner proposed. Just what would constitute a "matter pending," however, is not defined, and if information of this general character cannot be obtained by an administrative body intrusted with general supervision, and even with power to order a reassessment, as will be demonstrated later, except in response to some kind of a complaint or when there is some "matter pending," it is quite apparent that an administrative body of the presumed importance of the tax commission will be wholly at a loss to proceed with its regular functions of supervision and administration. If the information which the law requires the commissioners to obtain cannot be had except under the limitations indicated in the majority opinion, intelligent supervision and efficient administration become impossible. This argument seems to me to be quite effectively disposed of by the supreme court of Indiana in the case of Co-operative Bldg. & L. Asso.

v. State, 156 Ind. 463, 60 N. E. 146, where, in answer to the argument that the inquisitorial power of the county assessor should be limited to the assessment season and to instances of special proceedings to add omitted property to the tax duplicate, the court said (p. 469): "Assessors may search for omitted property *independent of any proceeding* to add omitted property to the duplicate; they should first find it." It seems that if the statute contemplated that the powers of the tax commission were only to be exercised in furtherance of special proceedings before it, the legislature would have said so. The body is required to be in continuous session, and it seems to me that a fair reading of the act will disclose that it is made its duty to exercise the powers conferred upon its own initiative. Otherwise, there would be no way to attain the results which are the express aims of the legislature. See Re Davies, 168 N. Y. 89, 56 L.R.A. 855, 61 N. E. 118.

It is stated in the majority opinion that the assessment for the year 1917 was completed, reviewed, and equalized before the order was obtained, and the answer contains similar allegations. (It appears, however, that the amended petition was served in July before the equalization was complete.) A careful reading of the answer discloses that, though the defendants rely upon an assessment made by the local authorities as tending to defeat the jurisdiction of the tax commission, it is not stated that information of the character of that requested was ever supplied to the assessor or to any reviewing officer, and the answer shows that the agents of the tax commission were given access to the *physical* property of the defendant to enable them to determine ·*its* value. There is not the slightest suggestion in the record anywhere that any attempt has been made by any authority, other than the tax commission, to ascertain the facts upon which an assessment of the nonphysical property of the defendant electric company, if any, could be based; and the answer falls far short of any showing of willingness to make any disclosures of intangible property or of facts from which such intangible values, if any, might be determined. Yet it is said that there is no reasonable basis for an inquiry designed to uncover the facts upon which intangible values, if any, might be determined.

It is said in the majority opinion that the assessment for 1917 was complete, and that there was not even a suggestion in the petition or in the record that the assessor or any board of review had failed to per-

form his or its duty, or that property has escaped taxation, or that there has been any noncompliance with, or discovery of, any violation of the laws relating to assessment. Surely it is not expected that an administrative body exercising its powers in a capacity representing the state will proceed in the dark by presuming that other tax officers have been derelict in their duties. As I understand the Tax Commission Law, it is contemplated that the commission shall be first supplied with facts so that it may then determine whether other officers are proceeding in accordance with the law. It would be strange, indeed, if the legislature contemplated that the tax commission must first charge, without knowing, that other officers have failed to perform their duty. The majority opinion seems to me to border on absurdity in requiring a blind charge to be made as a condition of being permitted to obtain the information to substantiate the charge. The legislature has said what information the tax commission shall obtain, and it has not seen fit to impose such conditions. The majority seem to lose sight of the fact that the tax commission is a mere administrative agency, and not a judicial tribunal. The defendants are charged with nothing, and are not on trial,—perhaps not even suspected of being underassessed. They are merely asked and required to assist in the ordinary administration of the tax laws by supplying information which the legislature has deemed appropriate to that end. It is not for this court to characterize such proceedings as extraordinary. A proper respect for the legislative and executive branches of the government should rather lead to the conclusion that it is only the conduct of the defendants that is extraordinary. The record in this case shows quite conclusively that the necessity for a resort to a summons and subpœna duces tecum was occasioned by the refusal of the defendants to furnish the information upon request.

The condition of the law in this state, with reference to the assessment of property, does not justify the statement that the assessment of the defendant's property was complete for the year 1917. Subdivision 10 of § 2088, as amended by the legislature in 1917, chapter 232, authorizes the tax commission to make a reassessment in any year of all or any real or personal property, or either, in any assessment district, when, in the judgment of the commission, such assessment is desirable or necessary to the end that any or all property in such district shall be

assessed equally and in proper proportion to the taxes wherein such district is situated. The section provides in detail the procedure for reassessment, and under it there can be no question but what the tax commission would have had authority, even at the date when the order was obtained from the district court, to have caused a reassessment to be made of the property of the Hughes Electric Company which would have been effective for that year. The necessity for ordering a reassessment could not have been known to the tax commission except as it might appear from the facts which it was attempting to obtain. Furthermore, as was said by the supreme court of Indiana in the case of Co-operative Bldg. & L. Asso. v. State, supra: "It is not more inquisitorial in its nature to pry into the private affairs of a taxpayer by the examination of him and others after the original assessment lists have been made, than it is before or while they are being made." So, from the standpoint of the inquisitorial nature of this proceeding, it must, of necessity, be such if the facts which the legislature says should have a bearing upon the assessment are to be disclosed.

I am in hearty accord with the statement in the majority opinion that the lawmaking power is limited by constitutional restrictions, and that the legislature may not itself exercise nor confer upon an administrative body a general power of making inquiry into the private affairs of the citizen. It is elementary, however, that the 4th Amendment to the Federal Constitution only inhibits unwarranted searches and seizures by Federal officials, and that it has no application whatsoever to the action of the officers of the state. But it goes without saying that no tax system that depends for the efficiency of its administration upon disclosure by the citizens and taxpayers of their property can be efficiently administered without the exercise of a reasonable inquisitorial power.

It is also observed in the majority opinion that the statute under consideration makes no provision for granting immunity to those testifying before the tax commission, nor clothing their disclosures with secrecy. Of course, the failure to so provide enables the witness to fall back upon his constitutional privilege (Counselman v. Hitchcock, 142 U. S. 547, 35 L. ed. 1110, 3 Inters. Com. Rep. 816, 12 Sup. Ct. Rep. 195), and the inquisitorial power cannot be so extensively exercised where such provisions are lacking. This being true, in a matter of this

character no witness could be required to give evidence incriminating him, nor be compelled to make disclosures that would amount to an unreasonable search into his private affairs (Interstate Commerce Commission v. Brimson, 154 U. S. 447, 38 L. ed. 1047, 4 Inters. Com. Rep. 545, 14 Sup. Ct. Rep. 1125; Hale v. Henkel, 201 U. S. 43, 50 L. ed. 652, 26 Sup. Ct. Rep. 370), and in so far as the order in the instant case might be thought to require a disclosure in excess of the needs of the tax commission in the exercise of its supervisory power, it should be modified so as to guard against any unreasonable compulsion. This is the most that should be done in this case, but, instead of doing this, the majority opinion excuses the defendants altogether from disclosing facts which, it is perfectly obvious, are essential to the performance of the official duties charged upon the petitioners.

It is proper to observe here that the information that the defendants are asked to disclose is protected to the same extent, no more and no less, when given to the tax commission, as when given to an assessor.

If the majority opinion be construed as holding that the petition is defective as not showing that there had been some formal complaint made to the commission, which was at the time under investigation, it goes to the extreme limits of technicality. The recital of the fact of a complaint, formal or informal, would add so little to the showing of reasonable grounds for the order, that I cannot believe the majority would hang the decision on so slender a thread.

In my opinion the order was entirely proper, is expressly authorized by § 10 of chapter 303 of the Session Laws of 1911, and *should be affirmed.*