The STATE of North Dakota By and Through its Tax Commissioner, Byron L. DORGAN, Petitioner and Appellee,

v.

UNION STATE BANK, HAZEN, North Dakota, Respondent,

Eldor Miller, Intervenor and Appellant.

Civ. No. 9443.

Supreme Court of North Dakota.

June 28, 1978.

Rehearing Denied July 26, 1978.

Robert W. Wirtz, Sp. Asst. Atty. Gen., Bismarck, for petitioner and appellee.

Eldor Miller, pro se.

ERICKSTAD, Chief Justice.

This is an appeal by Eldor Miller, Intervenor and Appellant, from an order of the Burleigh County District Court requiring the Union State Bank, Hazen, North Dakota, (hereinafter Bank) respondent, to comply with the administrative subpoena duces tecum served on it by the Tax Commissioner for the State of North Dakota. The subpoena duces tecum required the president of the bank to appear before the State Tax Commissioner to be examined under oath in the matter "of the accounts and methods of Eldor Miller, Hazen, North Dakota." The subpoena also required the president of the bank to bring with him specified documents and records.

The facts in this appeal are not in dispute. In May of 1977, two agents of the Commissioner met with Miller and asked for permission to examine the financial records which would be relevant to his 1976 income tax year. According to the Commissioner, Eldor Miller did not file a North Dakota income tax return for 1976 and therefore the meeting was arranged to determine Miller's income tax liability, if any, for that year. Miller did not answer the questions of the agents regarding his possible tax liability. Miller was then informed by the agents that efforts would be made to secure information relative to his income tax liability from various third parties.

An administrative subpoena duces tecum dated May 27, 1977, was then served by the Commissioner upon the Union State Bank of Hazen. The Bank served the Commissioner with a return which stated that the Bank would not comply with the demands in the subpoena unless a district court judge issued an order requiring compliance with the subpoena. The Commissioner subsequently served the Bank with another subpoena dated September 19, 1977, and returnable September 23, 1977. Both subpoenas requested the same information. The Bank requested and the Commissioner agreed that the first return of the Bank stand as a return to the second subpoena.

The Commissioner then brought an action in the Burleigh County District Court requesting the court to enforce the Commissioner's administrative subpoena dated September 19, 1977. Miller filed a motion to intervene and was allowed to intervene by the district court. In an order dated December 1, 1977, the district court ordered the Bank to comply with the administrative subpoena duces tecum and it is from that order that Miller appeals to this court.

At the outset, it must be noted that this case differs from *Gasser v. Dorgan*, 261 N.W.2d 386 (N.D.1977). In *Gasser*, a taxpayer requested that a subpoena duces tecum issued to a bank by the State Tax Commissioner be quashed, and that the Commissioner be enjoined from obtaining information from the bank. We held that question to be moot in that the Commissioner already had received the records and documents subpoenaed. In the case now before us, the Commissioner has not received the records or documents and the issue of the propriety of this administrative subpoena duces tecum is properly before us.

■ The first issue we will discuss is Miller's contention that the Bank's compliance with the subpoena duces tecum would violate his Fourth Amendment rights.

The United States Supreme Court, in *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) has held in a 7–2 decision, that the records kept by a bank are not the depositor's private papers, but instead are the business records of the bank. The court said that there is no legitimate expectation of privacy in the information kept in bank records and that therefore the bank's compliance with the subpoena did not intrude upon the depositor's Fourth Amendment rights. We think what the court in *Miller* said is pertinent in this case.

"Since no Fourth Amendment interests of the depositor are implicated here, this case is governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time . . . the subpoena is issued. *California Bankers Assn. v. Shultz,* 416 U.S., at 53, 94 S.Ct., at 1513, 39 L.Ed.2d, at 835; *Donaldson v. United States,* 400 U.S. 517, 537, 91 S.Ct. 534, 545, 27 L.Ed.2d 580, 592 (1971) (Douglas, J., concurring). Under these principles, it was firmly settled, before the passage of the Bank Secrecy Act, that an Internal Revenue Service summons directed to a third-party bank does not violate the Fourth Amendment rights of a depositor under investigation. See *First National Bank v. United States,* 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796 (1925), aff'g, 295 F. 142 (S.D.Ala.1924). See also, *California Bankers Assn. v. Shultz, supra,* 416 U.S., at 53, 94 S.Ct., at 1513, 39 L.Ed.2d, at 835; *Donaldson v. United States,* 400 U.S., at 522, 91 S.Ct., at 538, 27 L.Ed.2d, at 584.

"Many banks traditionally kept permanent records of their depositors' accounts, although not all banks did so and the practice was declining in recent years. By requiring that such records be kept by all banks, the Bank Secrecy Act is not a novel means designed to circumvent established Fourth Amendment rights. It is merely an attempt to facilitate the use of a proper and long-standing law enforcement technique by insuring that records are available when they are needed.

"We hold that the District Court correctly denied respondent's motion to suppress, since he possessed no Fourth Amendment interest that could be vindicated by a challenge to the subpoenas." 425 U.S. at 444–45, 96 S.Ct. at 1624–25, 48 L.Ed.2d at 79–80.

In oral argument before this court, Miller acknowledged that *United States v. Miller, supra,* held contrary to his contention, but stated that he believed the Supreme Court had erred. In determining the meaning of the United States Constitution, we are bound to follow the majority decisions of the Supreme Court of the United States. *City of Bismarck v. Materi,* 177 N.W.2d 530, 538 (N.D.1970). We thus hold that Miller possesses no Fourth Amendment interest that could be vindicated by a challenge to the subpoena.

■ We also hold that the Bank's compliance with the subpoena would not violate Miller's Fifth Amendment right against self-incrimination. A party incriminated by evidence produced by a third party sustains no violation of his own Fifth Amendment rights. *California Bankers Assn. v. Shultz,* 416 U.S. 21, 55, 94 S.Ct. 1494, 1514, 39 L.Ed.2d 812, 837 (1974); *Johnson v. United States,* 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913). *See also Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) for extensive discussions on the existence of a taxpayer's Fifth Amendment right in cases where records were sought from third parties by subpoena for tax purposes.

In addition to asserting the Fourth and Fifth Amendments to the United States Constitution in support of his appeal, Miller also asserts generally in his brief "other securities against Government intervention by the Preamble, Main Body and Bill of Rights of the United States Constitution." Miller, does not state how any of those provisions, with the exception of the Fourth and Fifth Amendments previously discussed

are relevant to this appeal nor does he cite case authority interpreting those provisions in a manner relevant to this appeal. Without greater specificity we are unable to discern how any of his constitutional rights have been violated through the use of the subpoena.

■ Miller next contends that he has two contractual agreements with the Bank which make him the owner of the Bank records sought by the Commissioner. The first of these alleged contractual agreements is contained in Miller's reply brief and is listed as exhibit B. This exhibit does not appear in the record transmitted to this court, but we shall nevertheless discuss its possible relevance. The alleged contractual agreement is entitled "Notice" and the first line states "You are hereby put on notice that". Miller contends that he sent this notice in the form of a letter to the president of the Union State Bank of Hazen. In this notice Miller attempts to set forth his views of the law citing various sections of the United States Constitution and various sections of volume 16 of American Jurisprudence 2d. He commands the Bank not to reveal or disclose to any person information concerning his transactions with the Bank. The letter is signed only by Miller and apparently was recorded in the Mercer County Courthouse. We construe this letter to be nothing more than a notice to the Bank of Miller's views. It is not a contractual agreement and, therefore, it does not obligate the Bank to keep the records confidential. In any case, it is questionable whether or not the Bank could enter into such an agreement which would be binding upon the government.

■ The second contractual agreement which Miller contends to be relevant to this appeal is the depositor's contract found on the signature card which the Bank has its depositors sign. Miller contends the depositor's contract does not claim title to any monies or records. Miller, however, did not point out any specific section of the depositor's contract which would prohibit the Bank from maintaining records of his transactions with the Bank or which would pro-

hibit the Bank from disclosing the records to the tax department. We have reviewed the depositor's contract as contained in Miller's reply brief and have found no provisions in it which would prohibit the Bank from keeping records or disclosing such records.

■ Miller also asserts, in a related argument, that the Bank is not permitted to make copies of his checks. Miller asserts that he stamped the following notice on many of his checks before issuing them: "No copy permitted without signed permission of signer(s). Up to $10,000 fine and 10 years in prison. U.S.Criminal Code Title 18 Sec. 241–242, Amend. 1, 4, 5, 6, 7, & 14 U.S.Const. Fair Credit Reporting Act of April 25, 1971." We have reviewed the authorities contained in the above notice and have found nothing in those provisions which prohibits the Bank from making copies of its depositor's checks for its own records. In fact the Bank Secrecy Act of 1970 (Pub.L. 91–508, 84 Stat. 1114, 12 U.S.C. §§ 1730d, 1829b, 1951–1959 and 31 U.S.C. §§ 1051–1062, 1081–1083, 1101–1105, 1121–1122) and the regulations promulgated thereunder by the Secretary of the Treasury require the Bank to copy certain checks and records.

■ Miller at oral argument asserted that the significance of the letter to the Bank, the depositor's contract, and the notice put on his checks was that he had not relinquished any of his rights and that the Bank did not claim title to his banking records. However, the United States Supreme Court in *United States v. Miller, supra*, held that the bank records are not the private property of the depositor, but are the business records of the bank. Miller cannot change that by merely giving notice to the Bank that he considers the records of his bank transactions to be his private papers, or by claiming that the Bank did not specifically state to him that he would not have title to the bank records of his transactions. We believe pertinent what the Supreme Court said in *Miller, supra*:

"The lack of any legitimate expectation of privacy concerning the information kept in bank records was assumed by Congress in enacting the Bank Secrecy Act, the expressed purpose of which is to require records to be maintained because they 'have a high degree of usefulness in criminal tax, and regulatory investigations and proceedings.' [Citations omitted.]

"The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. [Citations omitted.] This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." [Citations omitted.] 425 U.S. at 442–43, 96 S.Ct. at 1624, 48 L.Ed.2d at 79.

We therefore hold that none of Miller's contentions constitute a legal basis for distinguishing this case from the holding of *United States v. Miller, supra.*

■ The last issue raised by Miller is whether or not the North Dakota State Tax Commissioner has authority under the laws of North Dakota to subpoena the records in question. The Commissioner contends that his authority to issue the subpoena in this case is set out in Sections 57–38–56 and 57–01–02(6), N.D.C.C. Those sections read:

"The tax commissioner is charged with the administration of this chapter, and shall enforce the assessment, levy, and collection of taxes herein imposed. He shall have power to examine or cause to be examined by any agent or representative designated by him for that purpose, any books, papers, records, or memoranda bearing upon the matters required to be included in any return or report under this chapter, and may require the attendance of the taxpayer or of any other person having knowledge in the premises, and may take testimony and require

proof material for his information. He may prescribe all rules and regulations, not inconsistent with the provisions of this chapter, necessary and advisable for its detailed and efficient administration, and may enter into reciprocal agreements with the authorized tax officials of other states to assist in the enforcement of such chapter and to avoid injustice to taxpayers from double taxation." § 57–38–56, N.D.C.C.

"The tax commissioner:

\*     \*     \*     \*     \*     \*

"6.  May summon witnesses to appear and give testimony and produce books, records, papers, and documents relating to any matter which he or the state board of equalization may have authority to investigate or determine, and may cause the depositions of witnesses residing within or without the state, or temporarily absent therefrom, to be taken, upon notice to the interested parties, if any, in like manner as depositions of witnesses are taken in civil actions in the district court;" § 57–01–02(6), N.D.C.C.

We agree with the Tax Commissioner that these sections do give the Tax Commissioner the authority to issue subpoenas duces tecum for the production of documents deemed relevant to a determination of tax liability.

■ Miller contends, however, that Sections 57–38–56 and 57–01–02(6), N.D.C.C., are unconstitutional in that they involve an improper delegation of legislative authority. We disagree.

In *Ralston Purina Company v. Hagemeister,* 188 N.W.2d 405 (N.D.1971), we said:

"The power to make a law is legislative, but the conferring of authority as to its execution, which authority is to be exercised under the provisions of the law itself, as enacted by the Legislature, may be delegated. The true distinction between the powers which the Legislature may delegate and those which it may not

is to be determined by ascertaining whether the power granted gives authority to make a law or whether the power pertains only to the execution of the law which was enacted by the Legislative Assembly." 188 N.W.2d at 410–11.

*See also Southern Valley Grain Dealers Assn. v. Board of County Commissioners,* 257 N.W.2d 425 (N.D.1977).

The authority granted by the Legislature to the Tax Commissioner in Sections 57–38–56 and 57–01–02(6), N.D.C.C., is not the authority to make law. It only gives the Tax Commissioner the authority to execute or enforce the tax laws passed by the North Dakota Legislature. The fact that those sections give the Tax Commissioner the authority to issue subpoenas does not make those sections unconstitutional. That it is not unconstitutional to grant subpoena powers to administrative agencies has been decided by many courts. *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Endicott Johnson Corporation v. Perkins,* 317 U.S. 501, 510, 63 S.Ct. 339, 344, 87 L.Ed. 424, 430 (1943); *Redding Pine Mills v. State Board of Equalization,* 157 Cal.App.2d 40, 320 P.2d 25 (1958), *cert. den.* 358 U.S. 818, 79 S.Ct. 29, 3 L.Ed.2d 60 (1958). *See also* 1 Am.Jur.2d Administrative Law § 86, and 73 C.J.S. Public Administrative Bodies and Procedures § 86, for further case citations.

This court, in *Wallace v. Hughes Electric Co.,* 41 N.D. 418, 428, 171 N.W. 840, 843 (1919), held that "the Legislature may confer authority upon a nonjudicial body to summon witnesses and require the production of books and records in a proceeding properly pending before, and within the jurisdiction of, such body, . . .." We now hold that the Legislature may confer upon the State Tax Commissioner the authority to summon witnesses and require the production of books, records, papers, and documents relating to any matter which the Tax Commissioner has the authority to investigate even if no official proceeding is pending before him. This power is, of course, subject to the provisions of our State and United States Constitutions. In the instant case we have concluded that the subpoena of the records of the Bank does not violate any constitutional right of the intervenor.

The order of the district court requiring the Union State Bank of Hazen, North Dakota, to comply with the administrative subpoena duces tecum is therefore affirmed.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.