2007 ND 38

STATE of North Dakota, by and through WORKFORCE SAFETY, AND INSURANCE Petitioner, Appellant and Cross–Appellee

v.

ALTRU HEALTH SYSTEMS, Respondent, Appellee and Cross–Appellant.

No. 20060107.

Supreme Court of North Dakota.

March 8, 2007.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, N.D., for petitioner, appellant and cross-appellee.

Randall S. Hanson (argued), Scott D. Jensen (on brief), and Joel L. Larson (on brief), Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, N.D., for respondent, appellee and cross-appellant.

KAPSNER, Justice.

[¶ 1] Workforce Safety and Insurance ("WSI") appeals and Altru Health Systems ("Altru") cross-appeals from a district court order denying WSI's motion for contempt, permitting WSI to take depositions of a claimant's treating physician and physician's assistant in connection with a fraud investigation, and prohibiting WSI from requiring either the physician or physician's assistant to review videotaped surveillance of the claimant. Because we conclude that the district court did not abuse its discretion under N.D.C.C. § 65–02–11, we affirm.

I

[¶ 2] As a part of a fraud investigation, WSI asked Altru to permit an investigator from WSI's special investigations unit to meet with a claimant's treating physician and physician's assistant. Altru denied WSI's request, and WSI issued an administrative subpoena on July 30, 2005, to take depositions of the claimant's physician and physician's assistant. The physician and physician's assistant resisted the depositions, and WSI thereafter commenced a proceeding in district court under N.D.C.C. § 65–02–11 to enforce the administrative subpoenas.

[¶ 3] On September 1, 2005, the district court issued an "Order on Application for Enforcement of Administrative Subpoena," which allowed WSI to take the depositions of the claimant's physician and physician's assistant without notice to the claimant and required the physician and physician's assistant to appear and answer questions. The order also provided that neither the treating physician nor physician's assistant would be required to review videotaped surveillance "in preparation for appearing for the depositions." The order limited WSI's inquiries to facts relating to the investigation of possible violations of N.D.C.C. § 65–05–33 in the time period covered by WSI's investigation.

[¶ 4] After the district court's September 1, 2005, order, WSI again issued administrative subpoenas under N.D.C.C. § 65–02–11, and depositions were scheduled for the physician and physician's assistant. At the October 27, 2005, deposition of the physician's assistant, WSI's counsel advised the physician's assistant that she was going to be asked questions relating to her treatment of the injured worker and that she would be shown videotaped surveillance and asked some questions relating to the videotape. The physician's assistant refused to view the videotaped surveillance, and her deposition proceeded without her watching the videotape. The deposition of the claimant's treating physician, which also had been scheduled for the same day, was canceled.

[¶ 5] On November 4, 2005, WSI filed a contempt motion with the district court, seeking enforcement of the court's Sep-

tember 1, 2005, order. On February 9, 2006, the district court issued an order denying both parties' requests for sanctions and clarifying its previous order.

2. Neither of the requested deponents, [claimant's treating physician and physician's assistant], shall be required to review any videotape surveillance in the possession of WSI in preparation for or in connection with their depositions. The court specifically finds that it is irrelevant whether the videotape would be shown to the witnesses prior to the deposition or at the time of the depositions, and neither shall be allowed.

3. The Court specifically finds that NDCC Section 65–02–11 allows WSI to be able to examine witnesses and subpoena records, among other things, but that it does not require that the requested deponents become expert witnesses for WSI. To require the treating physician and the physician's assistant to be turned into expert witnesses is beyond the scope of 65–02–11. If WSI requires an expert witness on these issues, it certainly has an outside expert that would be available to not only look at the record that was obtained from Altru but also to review the videotape referred to in its entirety.

4. The Court will stand by its original Order in which it was ordered that [claimant's treating physician and physician's assistant] shall not be required to review videotape surveillance.

[¶ 6] WSI appealed and Altru cross-appealed from the court's February 9, 2006, order.

II

[¶ 7] WSI argues the district court erred in limiting its ability to question the claimant's physician and physician's assistant regarding WSI's video-taped surveillance of the claimant.

[¶ 8] WSI asserts the district court erred as a matter of law in concluding that N.D.C.C. § 65–02–11 does not permit the deponents to become WSI's expert witnesses and ordering that the treating physician and physician's assistant not be required to review videotaped surveillance of the claimant. WSI contends the deponents' potential testimony relates to the issue of whether the claimant's activities were inconsistent with the claimant's statements to his treating physician and physician's assistant and whether the claimant's activities demonstrated a willful misrepresentation of physical ability or condition under N.D.C.C. § 65–05–33.

[¶ 9] Section 65–02–11, N.D.C.C., which authorizes WSI to examine witnesses and issue subpoenas to compel the attendance of witnesses, states:

Except as otherwise provided by this title, process and procedure under this title is governed by chapter 28–32. The organization *may make investigation as in its judgment is best calculated to ascertain the substantial rights of all the parties.* Any member of the organization, and any person specifically designated by the organization may examine witnesses and records, with or without subpoena, examine, investigate, copy, photograph, and take samples at any pertinent location or facility, administer oaths to witnesses, require the attendance of witnesses without fee whenever the testimony is taken at the home, office, or place of work of those witnesses, *and generally to do anything necessary to facilitate or promote the efficient administration of this title.* The organization may issue a subpoena to compel the attendance of witnesses and the production of books, papers, correspondence, memoranda, and any other records deemed necessary by the organization. Subpoenas may be enforced by applying

to a judge of the district court for an order requiring the attendance of a witness, the production of all documents and objects described in the subpoena, or otherwise enforcing an order. Failure to comply with the order of the district court is contempt as provided in chapter 27–10. The organization shall pay the costs of any medical examination, scientific investigation, medical or expert witness appearance or report, requested or approved by the organization, relating to a claim for benefits, from the organization's general fund.

(Emphasis added.)

[¶ 10] WSI asserts that the phrase "generally to do anything necessary" in N.D.C.C. § 65–02–11 permits it to show the videotaped surveillance to the claimant's treating physician and physician's assistant and compel them to respond to WSI's questions regarding the videotape.

■ [¶ 11] We have not addressed the scope of judicial inquiry and our standard of review under N.D.C.C. § 65–02–11. In a similar context, however, this Court has explained that the scope of judicial inquiry for applications for enforcement of administrative discovery orders, protective orders, and subpoenas is limited. *Medical Arts Clinic, P.C. v. Franciscan Initiatives, Inc.*, 531 N.W.2d 289, 300 (N.D.1995). The district court's inquiry in proceedings for enforcing an administrative subpoena is limited to whether: "(1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry of the administrative proceeding; (3) the subpoena is reasonably specific; and (4) the subpoena is not unduly broad or burdensome." *Id.* at 300–01 (citations omitted). In *Medical Arts Clinic,* this Court held:

[J]udicial review of administrative discovery decisions regarding trade secrets, whether in the context of an appli-

cation for enforcement . . ., an appeal from a final agency decision, or in the limited circumstances where a writ of prohibition is available, is restricted by the doctrine of separation of powers. In those situations, a reviewing court may not insert itself into the agency's administrative role. Rather, the hearing officer, like a trial judge in a civil action, is responsible in the first instance for exercising the wide range of his or her discretion in ruling on discovery issues, . . . and those rulings are subject to judicial review under the narrow standard of abuse of discretion.

*Id.* at 301.

[¶ 12] Here, the district court was not reviewing an administrative hearing officer's decision relating to administrative discovery, nor has the court refused to order enforcement of WSI's subpoena. Rather, the court issued its initial order enforcing WSI's ex parte, investigatory subpoena, but restricted WSI's use of surveillance videotape. Upon WSI's subsequent motion for contempt, the court issued an order denying WSI's motion and clarifying the court's previous order, restricting WSI from using the videotaped surveillance both before and during the depositions. Both parties have appealed from the court's subsequent "Order on Motion for Contempt." On appeal, WSI asks this Court to reverse the district court's subsequent order "as it pertains to the prohibition of review of videotaped surveillance in connection with the depositions of" the claimant's treating physician and physician's assistant.

■ [¶ 13] The court's order imposing the restriction on WSI's subpoena is in the nature of a protective order. Courts have reviewed a district court's decision to issue a protective order imposing restrictions on an administrative subpoena for an abuse of

discretion. *See, e.g., United States v. Chevron U.S.A., Inc.*, 186 F.3d 644, 650 (5th Cir.1999) (reviewing district court's protective order entered in conjunction with enforcement of administrative subpoenas for an abuse of discretion); *see also McLaughlin v. Service Employees Union, AFL–CIO, Local 280*, 880 F.2d 170, 174 (9th Cir.1989); *Federal Trade Comm'n v. Shaffner*, 626 F.2d 32, 38 (7th Cir.1980). *Cf. Kramer v. Kramer*, 2006 ND 64, ¶¶ 19–21, 711 N.W.2d 164 (holding district court's issuance of protective order limiting discovery not an abuse of discretion). We review the district court's order restricting WSI from showing the videotaped surveillance for an abuse of discretion. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or [un]conscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law." *Kramer*, at ¶ 20.

[¶ 14] WSI argues the district court erred because N.D.C.C. § 65–02–11 provides for broad investigatory powers, allowing WSI to do "anything necessary to facilitate or promote the efficient administration of [Title 65]." The district court, however, concluded that requiring the treating physician and physician's assistant to be turned into expert witnesses for WSI is beyond the scope of N.D.C.C. § 65–02–11. In reviewing whether the district court misinterpreted or misapplied N.D.C.C. § 65–02–11, we look to the language of the statute.

[¶ 15] Statutory interpretation is a question of law, which is fully reviewable on appeal. *Ballensky v. Flattum–Riemers*, 2006 ND 127, ¶ 22, 716 N.W.2d 110; *GO Comm. ex rel. Hale v. City of Minot*, 2005 ND 136, ¶ 9, 701 N.W.2d 865.

The primary objective in interpreting a statute is to determine the legislature's intent. *Amerada Hess Corp. v. State ex rel. Tax Comm'r*, 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1–02–03 and 1–02–38(2).

*Ballensky*, at ¶ 22. In construing statutes, it is presumed that a just and reasonable result is intended. N.D.C.C. § 1–02–38(3); *State v. Jackson*, 2005 ND 137, ¶ 10, 701 N.W.2d 887. We interpret statutes to avoid unreasonable or absurd consequences. *BASF Corp. v. Symington*, 512 N.W.2d 692, 697 (N.D.1994).

[¶ 16] In this case, we believe it would be unreasonable to interpret the "anything necessary" language in N.D.C.C. § 65–02–11 as broadly as suggested by WSI. To avoid unreasonable or absurd consequences, we construe N.D.C.C. § 65–02–11 to require an element of reasonableness in determining the scope of the phrase "anything necessary." *See* N.D.C.C. § 1–02–38(3); *cf. Fandrich v. Wells County Bd. of County Comm'rs*, 2000 ND 181, ¶ 20, 618 N.W.2d 166 (implying standard of reasonableness in applying statutory provisions relating to drainage of surface waters).

[¶ 17] Here, the district court's only limitation on WSI's discovery was to prohibit WSI from showing the videotaped surveillance of the claimant to the claim-

ant's treating physician and physician's assistant in preparation for or during their respective depositions. The district court reasoned that compelling these witnesses to view the videotape and testify on their observations would inappropriately convert the claimant's treating physician and physician's assistant into expert witnesses for WSI. WSI argues that concerns about the physician-patient relationship are misplaced because the filing of a claim constitutes the claimant's consent for WSI to use information received by the physician and hospital in connection with the claim under N.D.C.C. § 65–05–30.

[¶ 18] This Court has recognized the importance of the physician-patient relationship and the expectations of confidentiality which flow from that relationship. *Tehven v. Job Serv. North Dakota,* 488 N.W.2d 48, 51 (N.D.1992); *see also* N.D.R.Ev. 503 (physician-patient privilege). In *Tehven,* at 51 (citations omitted), this Court explained:

> Generally, a physician may not disclose medical information acquired in treating a patient. The importance of physician-patient confidentiality is recognized in § 43–17–31(13), N.D.C.C., which provides that disciplinary action may be imposed upon a physician for "willful or negligent violation of the confidentiality between physician and patient." Courts have generally recognized a patient's right to recover damages from a physician for unauthorized disclosure of medical information as an invasion of privacy, a breach of the physician-patient confidential relationship, a violation of statute, or breach of the fiduciary relationship between a physician and a patient. The patient's privilege against disclosure of medical information generally extends to hospital records. Thus, a hospital has a very important interest in maintaining the confidentiality of patients' hospital medical records to avoid liability for un-

authorized disclosure of patient medical information.

[¶ 19] Regarding the claimant's consent for WSI to use information received by a physician, N.D.C.C. § 65–05–30 states:

> The filing of a claim with the organization constitutes a consent to the use by the organization, in any proceeding by it or to which it is a party in any court, of any information, including prior and subsequent prognosis reports, medical records, medical bills, and other information concerning any health care or health care services which was received by any doctor, hospital, or clinic *in the course of any examination or treatment of the claimant.* The filing of such claim authorizes a doctor, hospital, or clinic to disclose *any such information* to the organization, its representative, or to the employer, except that any such information directly disclosed to the employer must be relevant to the employee's work injury or to return to work issues. No physician or health care provider furnishing such reports or records incurs any liability as a result.

(Emphasis added.)

[¶ 20] The plain language of N.D.C.C. § 65–05–30 defines the scope of the claimant's consent and refers to information received "in the course of any examination or treatment of the claimant." The language does not give a claimant's consent for the claimant's treating physician to provide expert opinion or become an expert witness outside of the examining physician's examination or treatment.

[¶ 21] WSI also asserts that N.D.C.C. § 65–02–24 provides immunity from civil liability for a person who assists WSI on any matter pertaining to an alleged violation of N.D.C.C. § 65–05–33 or provides information in the course of an investiga-

tion. However, the language of N.D.C.C. § 65–02–24 does not compel a claimant's treating physician to become an expert for WSI's investigations into alleged violations of N.D.C.C. § 65–05–33 outside of the treating physician's or, in this case, physician's assistant's, examination or treatment of the claimant. Moreover, although a person may be immune from civil liability for assisting WSI under N.D.C.C. § 65–02–24, litigation could still result since the person assisting WSI must act in good faith and without malice, which may involve fact questions. *See, e.g., Ballensky,* 2006 ND 127, ¶ 28, 716 N.W.2d 110 (holding whether a patient's physician acted in good faith when she made a report to a police officer created fact issues for purposes of determining whether physician was immune from liability for unauthorized disclosure).

[¶ 22] WSI argues that claimants' treating physicians and other medical professionals are routinely asked to provide opinions that would constitute "expert opinions," such as "the relationship of a condition to a work injury, the effect of a work injury on a pre-existing condition, the extent of a disability, maximum medical improvement, and whether an injured worker is capable of performing certain employment activities." WSI further asserts that there are occasions when a claimant's treating medical professional may be asked to review outside information, such as reviewing a job description or videotapes or photographs of a work station or work area, and express an opinion. While these types of requests for opinions from a claimant's treating medical professionals would not necessarily diverge from claimant's consent under the statute and the professional's obligations to a patient, those circumstances are not present in this case. Here, WSI is attempting to compel the claimant's treating physician and physician's assistant, in the context of a fraud investigation under N.D.C.C. § 65–05–33, to observe videotaped surveillance and make new observations, which are potentially adverse to their patient and which go beyond the scope of the claimant's consent in N.D.C.C. § 65–05–30.

[¶ 23] We have recognized that procedural due process has modest application at the investigative stage because of potential disruptions to the investigative process, such as transforming investigative hearings into trial-like proceedings and giving persons who might be indirectly affected by an investigation an absolute right to cross-examination of every witness called to testify. *See, e.g., North Dakota Comm'n on Med. Competency v. Racek,* 527 N.W.2d 262, 265–66 (N.D.1995).

[¶ 24] WSI correctly points out that this case is still in an investigative stage and has not reached an "adjudicative proceeding" as contemplated by N.D.C.C. §§ 28–32–01 and 28–32–33. However, what WSI is seeking here as a part of its investigation is not simply existing information from the claimant's treating physician and physician's assistant gained in the course of examination or treatment, but rather the ex parte creation of new expert opinion and testimony regarding observations of the videotape made outside of the physician-patient relationship. *Cf. Brown v. Bi–Lo, Inc.,* 354 S.C. 436, 581 S.E.2d 836, 838 (2003) (holding statute governing disclosure of "existing" written records and documentary materials did not permit other ex parte communication between employer and claimant's health care provider); *Church's Fried Chicken No. 1040 v. Hanson,* 114 N.M. 730, 845 P.2d 824, 829 (App.1992) (holding district court's authority to restrict ex parte discovery of worker's treating physician supported by public policy considerations). Although the treating medical professionals' viewing of videotaped surveillance may be appropriate at

some later stage of the administrative process, such as in an adjudicative proceeding, WSI's attempt to require the treating physician and physician's assistant to view the videotaped surveillance and answer questions relating to the videotape at the investigatory stage seeks to interfere with the existing physician-patient relationship and goes beyond the scope of the consent granted by the claimant in N.D.C.C. § 65–05–30.

[¶ 25]   On this record and under these circumstances, we conclude the district court did not act arbitrarily, unreasonably, or unconscionably, or misapply the law in placing reasonable limits upon WSI, which restricted WSI from requiring the claimant's treating physician and physician's assistant to review WSI's videotaped surveillance of the claimant in preparation for or during their ex parte, investigatory depositions.   We therefore conclude the court did not abuse its discretion.

### III

[¶ 26]   In its cross-appeal, Altru asserts this claim has reached an adjudicative stage and argues the district court erred in allowing WSI to take these depositions without requiring WSI give notice to the claimant.   Because of our resolution of the issue on appeal, we deem it unnecessary to address the issue raised in Altru's cross-appeal.   *Cf. Trinity Med. Ctr., Inc. v. Rubbelke,* 389 N.W.2d 805, 807 n. 3 (N.D.1986) (stating unnecessary to address issues that do not influence the outcome of the case); *Farmers State Bank of Leeds v. Thompson,* 372 N.W.2d 862, 865 n. 3 (N.D.1985) ("[W]e need not consider issues not necessary to our decision.").

### IV

[¶ 27]   The district court order is affirmed.

[¶ 28] GERALD W. VANDE WALLE, C.J., GEORGIA DAWSON, D.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 29] The Honorable GEORGIA DAWSON, D.J., sitting in place of CROTHERS, J., disqualified.