Filed 8/17/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 152

State of North Dakota, Plaintiff and Appellee

v.

Jay Larry Hammer, Defendant and Appellant

No. 20100025

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Georgia Dawson, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Reid A. Brady (argued) and Cherie L. Clark (on brief), Assistant State’s Attorneys, Courthouse, P.O. Box 2806, Fargo, ND 58108-2806, for plaintiff and appellee.

Jonathan T. Garaas (argued), DeMores Office Park, 1314 23rd Street South, Fargo, ND 58103-3796, for defendant and appellant.

Petra H. Mandigo Hulm (on brief), Special Assistant Attorney General, 400 East Broadway Avenue, Suite 600, P.O. Box 2798, Bismarck, ND 58502-2798, for amicus curiae State of North Dakota.

State v. Hammer

No. 20100025

Kapsner, Justice.

[¶1] Jay Larry Hammer appeals after entering conditional guilty pleas to two counts of workers’ compensation fraud.  We hold the district court did not err by denying Hammer’s motion to suppress bank records obtained through administrative subpoenas duces tecum, denying Hammer’s motions to dismiss on double jeopardy grounds, or permitting the State to file an amended information.  We decline to address Hammer’s argument concerning the district court’s rejection of his proposed jury instructions.  We affirm the district court orders.

I.

[¶2] In April 2005, Hammer sustained a work-related injury, and Workforce Safety & Insurance (“WSI”) accepted his claim for disability benefits.  In 2007, WSI began investigating whether Hammer had willfully made material false statements to the agency by failing to fully report work activities and income on injured worker status reports.  As part of its investigation, WSI issued administrative subpoenas duces tecum to two banks seeking copies of Hammer’s bank statements and deposit slips.  WSI did not provide notice of the subpoenas to Hammer, nor did the banks contact him before providing the requested information to WSI.  Following its investigation, WSI initiated administrative proceedings to terminate Hammer’s disability and medical benefits.  An administrative law judge found Hammer willfully failed to report income and work activities to WSI, which caused WSI to overpay $24,132.85 to Hammer.  Therefore, the administrative law judge terminated Hammer’s disability and medical benefits and ordered he pay restitution for the overpayment.

[¶3] In February 2009, the State filed criminal charges against Hammer.  The information charged Hammer with one count of “Failing to Report Wages” under N.D.C.C. §§ 65-05-08(3), 65-05-33(2), and 12.1-32-01(4) and one count of “Filing a False Claim or False Statement” under N.D.C.C. §§ 65-05-33(1), 65-05-33(2), and 12.1-32-01(4).  The first count alleged Hammer willfully “failed to report to WSI earnings from a mobile home repair business and from selling scrap metal,” while the second count alleged Hammer “received income from a mobile home repair business and selling scrap metal and willfully failed to report the income to WSI.”  At his initial appearance, Hammer claimed the criminal charges should be dismissed because the information was defective and the charges violated his constitutional right against double jeopardy.  The district court noted Hammer’s arguments and scheduled a preliminary hearing for April 2009.

[¶4] At the preliminary hearing, WSI attorney Robin Forward testified he issued administrative subpoenas duces tecum seeking Hammer’s bank records to two banks on two different occasions.  At the time he issued the subpoenas, Forward stated WSI had not initiated administrative proceedings against Hammer, but was merely performing an investigation.  During the preliminary hearing, Hammer again argued the criminal charges violated his constitutional right against double jeopardy because he was already penalized by the WSI order terminating his disability and medical benefits.  The district court found probable cause supported the information and set a trial schedule.

[¶5] Prior to trial, Hammer filed several motions.  Hammer filed a motion to suppress bank records obtained by WSI through administrative subpoenas duces tecum.  Hammer argued the district court should suppress the bank records because WSI violated his constitutional right against unreasonable search and seizure, as well as state law, in obtaining them.  Hammer also moved the district court to exclude from evidence the WSI order terminating his benefits, as well as the exhibits attached to the order, because the order and exhibits were the fruit of WSI’s illegal search.  Hammer moved to suppress evidence of his wife’s wages and income, arguing such evidence was irrelevant to the charges against him.  Finally, Hammer moved to dismiss the criminal charges.  Hammer reasserted his argument that the charges violated his constitutional right against double jeopardy, but he also claimed the district court should dismiss the charges because he does not have to report income he receives from his wife’s business to WSI.

[¶6] The district court denied all of Hammer’s motions.  The district court denied the motion to suppress because it concluded Hammer did not have a reasonable expectation of privacy in his bank records, and the constitutional right against unreasonable search and seizure did not apply.  The district court also held WSI complied with state law in obtaining the bank records.  The district court denied Hammer’s motion to dismiss, stating double jeopardy does not prohibit criminal charges following a WSI order terminating benefits.  The district court did not address Hammer’s arguments about the relevance of wages and income from a business owned by his wife.

[¶7] In October 2009, the State moved to file an amended information.  The amended information charged Hammer with one count of “Filing a False Claim or False Statement” in violation of N.D.C.C. § 65-05-33 and one count of “Filing a False Claim or False Statement” in violation of N.D.C.C. §§ 65-05-33 and 65-05-08.  The first count alleged Hammer “willfully failed to notify [WSI] of the receipt of income from work while having a claim for workers compensation disability benefits . . . .”  The second count alleged Hammer “willfully failed to notify [WSI] that he is or had been working while having a claim for workers compensation disability benefits . . . .”  The amended information also expanded the time period in which Hammer was claimed to have committed the offenses.  Hammer objected to the State amending the information, arguing the amendment substantively changed the charges and violated his right to due process.  The district court granted the State’s motion to amend over Hammer’s objection, postponed the trial, and scheduled a preliminary hearing on the amended charges.

[¶8] The district court held the second preliminary hearing in November 2009.  A WSI claims adjuster testified about WSI’s acceptance of Hammer’s claim for disability benefits, as well as WSI’s awareness of Hammer’s prior work selling scrap metal.  The district court found probable cause supported the charges as amended and took notice of Hammer’s previous arguments regarding double jeopardy and the bank searches.  In December 2009, Hammer filed proposed jury instructions with the district court, as well as a motion in limine asking the court to prohibit the State from introducing into evidence the injured worker status reports he submitted to WSI.  The district court rejected Hammer’s proposed jury instructions and denied his motion in limine.  Hammer then entered guilty pleas conditioned upon his appeal to this Court.

II.

[¶9] Hammer argues the district court erred by denying his motion to suppress the bank records because WSI violated his constitutional right against unreasonable search and seizure when it obtained the records through administrative subpoenas duces tecum.  Hammer also claims the district court should have suppressed the records because WSI violated state law regarding the production of bank records and investigations by administrative agencies.

A.

[¶10] Hammer argues the district court erred by denying his motion to suppress because WSI violated his constitutional right against unreasonable search and seizure.  Hammer claims WSI should not have been able to obtain his bank records through administrative subpoenas duces tecum, but rather should have been required to obtain search warrants issued by a neutral and detached magistrate.

[¶11] The Fourth Amendment of the United States Constitution provides:  “The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause . . . .”  
See also
 N.D. Const. art. I, § 8 (providing for a right against unreasonable search and seizure).  “[I]f an individual has a reasonable expectation of privacy in the area searched or the materials seized, then a search and seizure within the protection of the Fourth Amendment has been conducted.”  
Lubenow v. N.D. State Highway Comm’r
, 438 N.W.2d 528, 531 (N.D. 1989) (citing 
Terry v. Ohio
, 392 U.S. 1, 9 (1968); 
State v. Johnson
, 301 N.W.2d 625, 627 (N.D. 1981)).  If a search or seizure is within the protection of the Fourth Amendment, the government must generally obtain a warrant.  
State v. Gregg
, 2000 ND 154, ¶ 23, 615 N.W.2d 515 (citing 
State v. Blumler
, 458 N.W.2d 300, 302 (N.D. 1990)).

[¶12] In 
Dorgan v. Union State Bank
, 267 N.W.2d 777, 779 (N.D. 1978) (citing 
United States v. Miller
, 425 U.S. 435 (1976)), this Court held “there is no legitimate expectation of privacy in the information kept in bank records,” and the Fourth Amendment did not provide protection against the government obtaining a customer’s bank records through a subpoena duces tecum.  As the U.S. Supreme Court stated in 
Miller
, at 440-43, records in the custody of a bank “are the business records of the bank,” and a bank customer “takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government.”
(footnote: 1)  However, since this Court’s decision in 
Dorgan
, the state legislature adopted N.D.C.C. ch. 6-08.1, which regulates the manner in which banks may disclose customer records.  Hammer argues N.D.C.C. ch. 6-08.1 provides bank customers with a reasonable expectation of privacy in their records, 
Dorgan
 is no longer binding precedent, and the protections of the Fourth Amendment apply when the government obtains bank records through a subpoena duces tecum.  We disagree.

[¶13] The legislature adopted N.D.C.C. ch. 6-08.1 in 1985.  1985 N.D. Sess. Laws ch. 129, § 1.  In 1987, the legislature amended N.D.C.C. § 6-08.1-02 to provide for an additional exemption from the provisions of the chapter.  1987 N.D. Sess. Laws ch. 122, § 1.  The amendment provided N.D.C.C. ch. 6-08.1 did not apply to the “[d]isclosure of customer information to a law enforcement agency or governmental agency pursuant to a search warrant or subpoena duces tecum issued in accordance with applicable statutes or the North Dakota Rules of Criminal Procedure.”  
Id.
; N.D.C.C. § 6-08.1-02(9).  Section 6-08.1-01(5), N.D.C.C., defines “governmental agency” as “any agency or department of this state, or any authorized officer, employee, or agent of an agency or department of this state.”

[¶14] The legislative history of the amendment to N.D.C.C. § 6-08.1-02 demonstrates the legislature intended to make it easier for the government to obtain bank records during investigations and thereby ameliorate the burden created by the adoption of N.D.C.C. ch. 6-08.1.  
See
 
Hearing on H.B. 1577 Before the House Committee on Industry, Business, and Labor
, 50th N.D. Legis. Sess. (February 10, 1987; February 17, 1987); 
Hearing on H.B. 1577 Before the Senate Committee on Industry, Business, and Labor
, 50th N.D. Legis. Sess. (March 11, 1987; March 17, 1987).  In addition, hearing testimony demonstrates the legislature contemplated the amendment would allow state administrative agencies to obtain bank records during investigations through administrative subpoenas duces tecum.  
Senate Hearing on H.B. 1577
 (March 17, 1987) (testimony of Securities Commissioner Peter Quist).

[¶15] As amended, N.D.C.C. ch. 6-08.1 does not provide Hammer with a reasonable expectation of privacy in his bank records.  Section 6-08.1-02(9), N.D.C.C., specifically states the chapter does not apply to “[d]isclosure of customer information to a . . . governmental agency pursuant to a . . . subpoena duces tecum issued in accordance with applicable statutes . . . .”  Thus, where a governmental agency, pursuant to its statutory authority, issues a subpoena duces tecum to a bank seeking a customer’s records, the bank may disclose the records without complying with the requirements of N.D.C.C. ch. 6-08.1.  Read in conjunction with 
Dorgan
, the effect of the exemption is to allow government agencies to obtain bank records through subpoenas and without first obtaining a warrant.  
See
 
In re a Special Investigation No. 258
, 461 A.2d 34, 36-37 (Md. Ct. App. 1983) (holding bank customers did not have reasonable expectation of privacy under Maryland law regulating banks’ disclosure of customer information where statute provided exception for “compliance with a subpoena”).

[¶16] Because N.D.C.C. ch. 6-08.1 does not provide bank customers with a reasonable expectation of privacy from an administrative subpoena, 
Dorgan
 remains controlling precedent.  Under 
Dorgan
, a bank’s production of a customer’s records does not intrude upon the customer’s constitutional rights, and the government may obtain the records through the issuance of a subpoena duces tecum, even if criminal prosecution is contemplated at the time the subpoena is issued.  267 N.W.2d at 779 (citing 
Miller
, 425 U.S. at 443-44; 
California Bankers Ass’n v. Shultz
, 416 U.S. 21, 52 (1974); 
Donaldson v. United States
, 400 U.S. 517, 537 (1971) (Douglas, J., concurring)).  Therefore, we hold the district court did not err by denying Hammer’s motion to suppress on constitutional grounds.

B.

[¶17] Hammer argues the district court erred by denying his motion to suppress because WSI violated state law when it obtained the bank records through administrative subpoenas duces tecum.  Section 65-02-11, N.D.C.C., provides: “[WSI] may make investigation as in its judgment is best calculated to ascertain the substantial rights of all the parties. . . .  The organization may issue a subpoena to compel the attendance of witnesses and the production of books, papers, correspondence, memoranda, and any other records deemed necessary by the organization.”  However, N.D.C.C. § 65-02-11 also states “[e]xcept as otherwise provided by this title, process and procedure under this title is governed by chapter 28-32.”  Hammer claims N.D.C.C. title 65 does not specifically explain how WSI can exercise its subpoena power, and N.D.C.C. ch. 28-32 therefore controls.

[¶18] Under N.D.C.C. § 28-32-33(2), only a “hearing officer” in an “adjudicative proceeding” may issue a subpoena, and the subpoena must be issued in accordance with the North Dakota Rules of Civil Procedure.  Thus, Hammer claims a hearing officer, not a WSI attorney, should have issued the administrative subpoenas duces tecum.  Hammer also argues WSI violated N.D.C.C. § 28-32-33(2) by failing to comply with the North Dakota Rules of Civil Procedure regarding notice and service of subpoenas.

[¶19] We hold the district court did not err by denying Hammer’s motion to suppress on state law grounds.  Section 65-02-11, N.D.C.C., authorized WSI’s actions in this matter.  The statute provides:  “[WSI] may make investigation as in its judgment is best calculated to ascertain the substantial rights of all the parties. . . .  The organization may issue a subpoena to compel . . . the production of books, papers, correspondence, memoranda, and any other records deemed necessary by the organization.”  N.D.C.C. § 65-02-11.  When WSI issued the subpoenas to Hammer’s banks, the case was still in the investigatory stage and had not become an “adjudicative proceeding” as contemplated by N.D.C.C. §§ 28-32-01 and 28-32-33.  
See
 
Workforce Safety & Ins. v. Altru Health Systems
, 2007 ND 38, ¶ 24, 729 N.W.2d 113.  Therefore, the requirements of N.D.C.C. ch. 28-32 and North Dakota Rules of Civil Procedure did not apply, and WSI acted within its statutory authority under N.D.C.C. § 65-02-11 in obtaining Hammer’s bank records through administrative subpoenas duces tecum issued by a WSI attorney.

[¶20] While N.D.C.C. § 65-02-11 provides WSI with broad investigatory powers, this Court has previously affirmed the legislature’s power to grant administrative agencies with such powers even when no adjudicative proceeding is pending.  
See
 
Dorgan
, 267 N.W.2d at 782 (citing 
Wallace v. Hughes Elec. Co.
, 41 N.D. 418, 428, 171 N.W. 840, 843 (1919) (“[T]he Legislature may confer upon the State Tax Commissioner the authority to summon witnesses and require the production of books, records, papers, and documents relating to any matter which the Tax Commissioner has the authority to investigate even if no official proceeding is pending before him.”).  The legislature has granted numerous administrative agencies with investigatory powers similar to WSI, including the power to subpoena records.  
See, e.g.
, N.D.C.C. § 4-30-03.9 (agriculture commissioner); N.D.C.C. § 10-04-16.1 (securities commissioner); N.D.C.C. § 13-04.1-11 (department of financial institutions); N.D.C.C. § 14-02.5-13 (labor department); N.D.C.C. § 18-01-10 (fire marshal); N.D.C.C. § 26.1-03-19.3 (insurance commissioner); N.D.C.C. § 43-17.1-06 (board of medical examiners).  Hammer’s arguments regarding the largely unfettered power of administrative agencies to conduct investigations and subpoena records are not without merit, but the legislature has provided the agencies with such authority.

[¶21] In addition, procedures exist to challenge administrative subpoenas.  As we noted in 
Altru
, a district court may entertain a challenge to an administrative subpoena prior to enforcement, but such inquiry is limited to whether (1) the agency has the statutory authority to issue the subpoena; (2) the information sought is reasonably relevant to the inquiry of the agency; (3) the subpoena is reasonably specific; and (4) the subpoena is not unduly broad or burdensome.  2007 ND 38, ¶ 11, 729 N.W.2d 113 (citing 
Medical Arts Clinic, P.C. v. Franciscan Initiatives, Inc.
, 531 N.W.2d 289, 300 (N.D. 1995)).  Hammer argues the district court should have suppressed the bank records because WSI’s subpoenas duces tecum did not meet these criteria.  Hammer could not have objected to the subpoenas prior to the banks’ compliance because he did not have notice of them.  However, Hammer also did not argue the subpoenas failed to meet the criteria in his motion to suppress, nor did the district court rule on the issue.  As we have repeatedly stated, this Court will not consider issues raised for the first time on appeal.  
See, e.g.
, 
State v. Kurtenbach
, 2009 ND 93, ¶ 2, 767 N.W.2d 529 (per curiam); 
State v. Kieper
, 2008 ND 65, ¶ 16, 747 N.W.2d 497; 
State v. Gill
, 2008 ND 152, ¶ 21, 755 N.W.2d 454.

[¶22] Therefore, we hold the district court did not err by denying Hammer’s motion to dismiss on state law grounds because WSI acted within its statutory authority by obtaining Hammer’s bank records through administrative subpoenas duces tecum.  We affirm the district court order denying Hammer’s motion to suppress.

III.

[¶23] Hammer argues the district court erred by denying his motions to dismiss because the double jeopardy clauses of the federal and state constitutions prohibit his criminal prosecution in this matter.  “It is well established double jeopardy protects against successive prosecutions and punishments for the same criminal offense.”  
Unser v. N.D. Workers Comp. Bureau
, 1999 ND 129, ¶ 14, 598 N.W.2d 89 (quoting 
State v. O’Rourke
, 544 N.W.2d 384, 386 (N.D. 1996)).  When determining whether the double jeopardy clause prohibits a criminal prosecution following an administrative adjudication, “the issue is whether the administrative proceeding is deemed a criminal or civil proceeding for double jeopardy purposes.”  
State v. Stewart
, 1999 ND 154, ¶ 13, 598 N.W.2d 773 (citing 
Hudson v. United States
, 522 U.S. 93, 107 (1997)).  In 
Stewart
, at ¶ 25, this Court concluded “the administrative proceeding [under N.D.C.C. § 65-05-33] for reimbursement of benefits paid because of false statements or a false claim and for forfeiture of additional benefits for that injury is a civil sanction.”  Therefore, this Court held the double jeopardy clause of the federal constitution does not bar criminal prosecution following a WSI order terminating disability benefits.  
Id.

[¶24] However, Hammer argues the double jeopardy clause applies in this case because WSI did not simply terminate his right to future disability benefits, as in 
Stewart
, but also terminated his right to reimbursement for future medical expenses.  Hammer claims termination of his right to medical reimbursement is not a civil sanction because the payment of medical expenses is unrelated to his alleged failure to report income and work activities to WSI.  Because there is no connection between the medical expenses and failure to report, Hammer argues WSI’s termination of his right to medical reimbursement is a non-remedial, criminal sanction.

[¶25] We hold the double jeopardy clause does not prohibit Hammer’s criminal prosecution following the WSI adjudication terminating his right to future disability and medical benefits.  Section 65-05-07, N.D.C.C., states WSI “shall furnish to an injured employee reasonable and appropriate medical, surgical, and hospital service and supplies necessary to treat a compensable injury.”  
See also
 N.D. Admin. Code § 92-01-02-27 (discussing WSI’s regulations for medical reimbursement).  The reimbursement of medical expenses constitutes a benefit injured employees receive as a direct result of a compensable work-related injury.  As this Court stated in 
Stewart
, N.D.C.C. § 65-05-33 “authorizes [WSI] to use administrative proceedings to recoup benefits paid to a claimant based upon a false claim or statements 
and to require a claimant to forfeit any additional benefits relative to that injury
.”  1999 ND 154, ¶ 17, 598 N.W.2d 773 (citations omitted) (emphasis added).  This Court concluded “the administrative proceeding [under N.D.C.C. § 65-05-33] for reimbursement of benefits paid because of false statements or a false claim 
and for forfeiture of additional benefits for that injury
 is a civil sanction.” 
Id.
 at ¶ 25 (emphasis added).  Because the reimbursement of medical expenses is an additional benefit for a compensable injury, WSI’s termination of Hammer’s right to medical reimbursement constituted a civil sanction.  We affirm the district court orders denying Hammer’s motions to dismiss on double jeopardy grounds.

IV.

[¶26] Hammer argues the district court erred by permitting the State to amend the information because the amended information alleged new and different charges, and the untimely action violated his right to due process.  Rule 7(e), N.D.R.Crim.P., provides:  “Unless an additional or different offense is charged or a substantial right of the defendant is prejudiced, the court may permit an information to be amended at any time before the verdict or finding.”  This Court reviews a district court’s decision to allow the State to amend the information under the abuse of discretion standard.  
State v. Foreid
, 2009 ND 41, ¶ 8, 763 N.W.2d 475 (citing 
State v. Vance
, 537 N.W.2d 545, 547 (N.D. 1995)).  “A district court abuses its discretion if it acts in an unreasonable, arbitrary, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned decision, or if it misinterprets or misapplies the law.”  
Citizens State Bank-Midwest v. Symington
, 2010 ND 56, ¶ 8, 780 N.W.2d 676.

[¶27] The original information charged Hammer with one count of “Failing to Report Wages” under N.D.C.C. §§ 65-05-08(3), 65-05-33(2), and 12.1-32-01(4) and one count of “Filing a False Claim or False Statement” under N.D.C.C. §§ 65-05-33(1), 65-05-33(2), and 12.1-32-01(4).  The first count alleged Hammer “failed to report to WSI earnings from a mobile home repair business and from selling scrap metal,” while the second count alleged Hammer “received income from a mobile home repair business and selling scrap metal and willfully failed to report the income to WSI.”  The amended information charged Hammer with one count of “Filing a False Claim or False Statement” in violation of N.D.C.C. § 65-05-33 and one count of “Filing a False Claim or False Statement” in violation of N.D.C.C. §§ 65-05-33 and 65-05-08.  The first count of the amended information alleged Hammer “willfully failed to notify [WSI] of the receipt of income from work while having a claim for workers compensation disability benefits . . . .”  The second count of the amended information alleged Hammer “willfully failed to notify [WSI] that he is or had been working while having a claim for workers compensation disability benefits . . . .”  The district court granted the State’s motion to amend the information over Hammer’s objection.

[¶28] We hold the district court did not abuse its discretion by permitting the State to amend the information.  The amended information did not charge Hammer with additional or different offenses.  Rather, both the original and amended information charged Hammer with filing a false claim with or making a false statement to WSI by failing to report work activities and income.  The original and amended information also cited N.D.C.C. § 65-05-33 as the statutory source for the criminal charges.  Hammer was not prejudiced by the district court’s decision to permit the amendment, as the district court postponed the trial and held a preliminary hearing to determine whether probable cause supported the criminal charges as amended.  We affirm the district court decision to permit the State to amend the information.

V.

[¶29] Hammer argues the district court erred by denying his requested jury instructions.  We decline to address this issue on appeal from Hammer’s conditional guilty pleas, as to do so would require this Court to issue an advisory opinion.

[¶30] “The debates of the Constitutional Convention leave no doubt that it was the deliberate judgment of the framers of the State Constitution that Judges of the Supreme Court . . . should not be required, or authorized, to give advisory opinions.”  
Langer v. State
, 69 N.D. 129, 154-55, 284 N.W. 238, 252 (1939).  As a result, “[w]e may adjudicate only an actual controversy, which requires an issue that is ripe for review.”  
Sprunk v. N.D. Workers Comp. Bureau
, 1998 ND 93, ¶ 15, 576 N.W.2d 861.  “An issue is not ripe for review if it depends on future contingencies which, although they might occur, necessarily may not, thus making addressing the question premature.”  
Bies v. Obregon
, 1997 ND 18, ¶ 9, 558 N.W.2d 855.

[¶31] With regard to jury instructions, we have explained:

Generally, this Court reviews jury instructions as a whole to determine whether the instructions fairly and adequately informed the jury of the applicable law.  The district court is not required to instruct the jury in the exact language sought by a party if the instructions are not misleading or confusing, and if they fairly advise the jury of the law on the essential issues of the case.  When the jury instruction, read as a whole, is erroneous, relates to a subject central to the case, and affects the substantial rights of the defendant, it is grounds for reversal.

State v. Zajac
, 2009 ND 119, ¶ 12, 767 N.W.2d 825 (internal citations and quotations omitted).  Hammer requests we overturn the district court order providing the court will not adopt Hammer’s proposed jury instructions.  Because no trial has yet taken place, and the district court has not yet issued jury instructions, we cannot know whether the district court’s instructions would fairly and adequately inform the jury of the applicable law, nor whether the instructions would affect Hammer’s substantial rights.  In fact, we cannot know whether future events, such as a plea bargain or not guilty verdict, would make our opinion on this matter moot.

[¶32] Therefore, we decline to address whether the district court erred by rejecting Hammer’s proposed jury instructions because to do so would amount to this Court issuing an advisory opinion.  
See
 
State v. Adams
, 609 S.E.2d 378, 381 (Ga. Ct. App. 2004) (“Adams also challenges the trial court’s decision to give jury instructions regarding his refusal to submit to breath testing.  As the trial has not yet taken place, however, no error has occurred.  The purpose of this Court is to correct actual error.  We do not provide advisory opinions as to potential error. . . .  Accordingly, we decline to address the alleged error at this juncture.”) (footnotes omitted); 
Fujitsu Microelectronics, Inc. v. Lam Research Corp.
, 27 P.3d 493, 498 (Ore. Ct. App. 2001) (“Because the trial court has not yet had an opportunity to determine the content of jury instructions or the appropriate verdict form to be used at trial, we will not render an advisory opinion on those subjects.”).  While we recognize this Court has previously reviewed a district court’s denial of a defendant’s requested jury instructions on appeal from a conditional guilty plea where it was the only issue raised on appeal, 
see
 
State v. Schmidt
, 2002 ND 43, ¶¶ 1-7, 640 N.W.2d 702, we decline to do so in this case.

VI.

[¶33] We have reviewed Hammer’s other arguments and find them to be either without merit or unnecessary to our decision.  We hold the district court did not err by denying Hammer’s motion to suppress bank records obtained through administrative subpoenas duces tecum, denying Hammer’s motions to dismiss on double jeopardy grounds, or permitting the State to file an amended information.  We decline to address Hammer’s argument concerning the district court’s rejection of his proposed jury instructions.  We affirm the district court orders.

[¶34] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:
Congress superceded the effect of 
Miller
 by passing the Right to Financial Privacy Act of 1978 (RFPA).  The RFPA limits the ability of the federal government to obtain bank records by generally requiring the government notify a customer when it subpoenas a bank for the customer’s records and providing an opportunity for the customer to quash the subpoena.  
See, e.g.
, 
Hancock v. Marshall
, 86 F.R.D. 209, 210 (D.C. 1980).  However, the RFPA does not apply to state governments, 
see
 12 U.S.C. § 3401(3), nor does it provide bank customers with a reasonable expectation of privacy as a matter of constitutional law.  
See
 
United States v. Kington
, 801 F.2d 733, 737 (5th Cir. 1986) (in reference to the RFPA, stating:  “While it is evident that Congress has expanded individuals’ right to privacy in bank records of their accounts, appellees are mistaken in their contention that the expansion is of constitutional dimensions.  The rights created by Congress are statutory, not constitutional.); 
State v. Popenhagen
, 749 N.W.2d 611, 656 (Wis. 2008) (“[T]he Financial Privacy Act does not undercut the holding of 
Miller
.  
Miller
 rests on the Fourth Amendment and [is] controlling Fourth Amendment precedent . . . .”).